No. 72,329

FIRST NATIONAL BANK and TRUST, *Appellee,* v. MIAMI COUNTY
COOPERATIVE ASSOCIATION, *Appellant.*

(897 P.2d 144)

Opinion filed June 9, 1995.

*Terry D. Bertholf,* of Hutchinson, argued the cause and was on the briefs for appellant.

*Craig S. Powell*, of McQueary & Powell, of Osawatomie, argued the cause and was on the brief for appellee.

*Thomas J. Greco, John J. Gill,* and *Michael F. Crotty*, of Washington, D.C., and *Charles N. Henson*, of Wright, Henson, Somers, Sebelius, Clark & Baker, of Topeka, were on the joint brief for *amici curiae* American Bankers Association and The Kansas Bankers Association.

*David C. Barrett, Jr.*, of Washington, D.C., and *J. Stan Sexton*, of Salina, were on the brief for *amicus curiae* National Grain and Feed Association.

The opinion of the court was delivered by

LOCKETT, J.: This is a controversy between two creditors of a bankrupt farming operation. The creditors, a bank and a cooperative association, each claimed rights to certain farm products and their proceeds. The district court found that lien notices given by the bank to the cooperative association sufficiently complied with 7 U.S.C. § 1631(e)(1)(1994) of the Food Security Act of 1985 (the Act), and granted the bank partial summary judgment against the cooperative association. The parties subsequently stipulated to further entry of judgment against the cooperative association for conversion of farm products and proceeds in the amount of $44,910.63, interest, and costs. The cooperative association appealed. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

Larry and Sheree Low were farmers in Miami County, Kansas. For several years, the Lows' farming operation was financed through promissory notes from First National Bank & Trust (the Bank) in Osawatomie, Kansas, and an unsecured open account at the Miami County Cooperative Association (the Coop). The Bank is a sophisticated commercial lender which attempted to notify the Coop of its security interest under the Act. The Coop is an experienced commercial lender and buyer. The Coop, a supplier which furnished crop production inputs to the Lows, failed to obtain priority over the security interest of the Bank by notifying the Bank that it supplied agricultural chemicals and seed for the crops. See K.S.A. 58-241 *et seq.*

The Coop received notices of the Bank's security interest. Although it had knowledge that the Bank held a perfected security

interest in the Lows' farm products and their proceeds, the Coop purchased farm products from the Lows and applied the proceeds of the sales to payment of the Lows' indebtedness to the Coop. The Coop partially honored the Bank's notices from November 1987 through June 1991 by sometimes issuing checks to Larry Low, sometimes to the Bank *and* Low, and other times to itself *or* Low.

The Lows experienced financial difficulties related to their farming operation, defaulted on the promissory notes to the Bank, and eventually filed for bankruptcy. The Bank filed the action against the Lows (1) for the amounts owed under the notes; (2) to foreclose its security agreement with the Lows; and (3) against the Coop for the proceeds of the farm products sold by the Lows to the Coop. The Coop's answer asserted it was a buyer of farm products and that the Bank's failure to comply with the notice provisions of the Act acted to waive the Bank's claim to a valid, perfected security interest. Both parties filed motions for summary judgment. The Bank asserted that it had substantially complied with the notice requirement. The Coop argued that the federal Act requires that notices to the buyer of farm products strictly follow the requirements set out in the Act.

The district judge found that under the Act the Coop was a buyer of farm products. The judge determined that the Bank had acted in conformance with K.S.A. 1994 Supp. 84-9-401 by filing a financing statement with the Kansas Secretary of State in 1986 and renewing it each subsequent year. The judge observed that from 1986 through 1991, the Bank had sent the Coop written notice of its security interest in the Lows' crops. The judge acknowledged the Coop's argument that although it had received the notices, the Bank's notices failed to comply with the Act by not including (1) a legal description of the real property, (2) the county where the crops were grown, or (3) the specific kind of grain. The judge found the Coop's argument was not persuasive because all notices (1) identified the lender and debtor; (2) were valid for one year only by operation of law; and (3) claimed an interest in grain and beans grown by the Lows in Miami County, Kansas. The judge observed that a reasonable buyer of farm products would be on notice that the Bank claimed an interest in these farm products. The judge

concluded that the Bank's notices substantially complied with the Act and prevented the Coop from taking the farm products free from the Bank's claim upon them or the proceeds from their sale. The district judge entered summary judgment for the Bank against the Lows, in rem, and partial summary judgment for the Bank against the Coop. The judge refused summary judgment on the issues as to whether the Bank's claims were barred by the statute of limitations or whether the Bank had waived its rights.

To avoid a trial of the remaining issues, the Bank and the Coop stipulated that the Lows sold grain to the Coop having a value of $47,910.63, which is the amount of the Bank's claim against the Coop for conversion. Of that amount, a claim for recovery by the Bank from the Coop of $3,000 is barred by the statute of limitations. The Coop purchased grain from the Lows and applied the proceeds of such sales to payment of the Lows' indebtedness to the Coop in the amount of $44,910.63. The parties agreed to entry of judgment for the Bank against the Coop for $44,910.63, plus interest and costs. The Coop appeals.

### The Act

7 U.S.C. § 1631 (1994) of the Food Security Act of 1985 was enacted in response to the perceived burden on interstate commerce from state laws which permitted a secured lender to enforce liens against a purchaser of farm products, even if the purchaser did not know that the sale of the products violated the lender's security interest in the products, lacked any practical method for discovering the existence of the security interest, and had no reasonable means to ensure that the seller used the sales proceeds to repay the lender. 7 U.S.C. § 1631(a)(1). The perceived burden on and the obstruction to interstate commerce in farm products refers to security interests in growing crops or crops to be grown, as described in K.S.A. 1994 Supp. 84-9-109(3), created under the Kansas Uniform Commercial Code. See K.S.A. 1994 Supp. 84-9-203 and K.S.A. 1994 Supp. 84-9-402 (1). Congress reasoned that purchasers of farm products should not be subject to double payment for products—at the time of purchase and again if the seller failed to repay the lender. Congress perceived that exposure to double

payment inhibited free competition in the market for farm products and constituted a burden and obstruction to interstate commerce in farm products. 7 U.S.C. § 1631(a)(2)-(4).

The Act preempts the Kansas farm products exception found in K.S.A. 1994 Supp. 84-9-307(1). See *Farm Credit Bank v. F & A Dairy*, 165 Wis. 2d 360, 477 N.W. 2d 357 (Ct. App. 1991) (§ 1631 preempts state farm products law stating that buyer in ordinary course of business does not take free of security interest created by seller engaged in farming operations).

### Notice Required

The Act provides two methods of notification of a lender's security interest to buyers of farm products. Section 1631 provides for either a central filing system or a direct notification system to notify buyers of farm products of a secured party's interest. 7 U.S.C. § 1631(e)(1), (2). See 7 U.S.C. § 1631(a)(2), (4). Kansas has not enacted provisions for a central filing system; therefore, notification of a secured party's interest in farm products is by direct notification to a buyer of farm products.

### Central Filing System

The states which adopt the central filing system are not required to be in strict compliance with the Act. Section 1631 enounces that each effective financing statement (EFS) must be in substantial compliance with the statute and may be sufficient "even though it contains minor errors that are not seriously misleading." 7 U.S.C. § 1631(c)(4)(I).

Under a central filing system, an EFS must be filed with the Secretary of State and must include: (1) the name and address of the secured party; (2) the name and address of the person indebted to the secured party; (3) the social security number or taxpayer identification number of the debtor; and (4) "a description of the farm products subject to the security interest created by the debtor, including the amount of such products where applicable; and a reasonable description of the property, including county or parish in which the property is located." 7 U.S.C. § 1631(c)(4)(D)(i)-(iv). The language of the fourth requirement varies slightly from the requirements stated under a direct notification system. See 7

U.S.C. § 1631(e)(1)(A)(ii)(I)-(IV) ("a description of the farm products subject to the security interest created by the debtor, including the amount of such products where applicable, crop year, county or parish, and a reasonable description of the property"). Each financing statement remains effective for a period of five years from the date of filing, subject to extensions for additional periods of five years. 7 U.S.C. § 1631(c)(4)(F).

The Secretary of State is required to compile all the financing statements into a master list organized according to farm products. The master list is further arranged within each farm product: (1) in alphabetical order according to the name of the debtor; (2) in numerical order according to social security number or taxpayer identification number; (3) geographically by county or parish; and (4) by crop year. 7 U.S.C. § 1631(c)(2)(C). The Secretary of State must maintain a list of all buyers of farm products, commission merchants, and selling agents and must regularly distribute a copy of those portions of the master list that cover the farm products in which such buyer, commission merchant, or selling agent has registered an interest. Upon request, the Secretary of State furnishes confirmation of any EFS to parties who have not previously registered an interest in purchasing farm products. 7 U.S.C. § 1631(c)(2)(D)-(F).

The regulations implementing the central filing system are found in 9 C.F.R. § 205 *et seq.* (1995). Section 205.103 states that the minimum information necessary on an EFS is: (1) crop year, unless every crop of the farm product in question, for the duration of the EFS, is to be subject to the particular security interest; (2) specific farm product name (*i.e.*, specific farm commodities, species of livestock, and specific products of crops or livestock, as opposed to miscellaneous categories; see §§ 205.106; 205.206); (3) each county or parish in the same state where the farm product is produced or to be produced; (4) name and address of each person subjecting the farm product to the security interest, whether or not a debtor; (5) social security number or taxpayer identification number; (6) further details of the farm product subject to the security interest if needed to distinguish it from other such products owned by the

same person or persons but not subject to the particular security interest; and (7) the secured party's name and address.

The statute does not require an EFS to show crop year, and provides that an EFS without such information must be regarded as applicable to the crop or product in question for every year that the EFS is statutorily effective. 9 C.F.R. § 205.107(b) (1995). The regulations further state that if the EFS does not show an amount, it means "that all of such product owned by the person in question is subject to the security interest in question." 9 C.F.R. § 205.207(b) (1995). Where the financing statement does not show any further location of the product beyond identifying the county or parish where the farm products are located, all such product in each such county or parish, owned by such person, is subject to the security interest. 9 C.F.R. § 205.207(c) (1995). The regulations continue:

"(d) The need to supply additional information arises only where some of that product owned by that person is subject to the security interest and some is not.

"(e) The additional information about amount and property must be sufficient to enable a reader of the information to identify what product owned by that person is subject, as distinguished from what of the same product owned by the same person is not subject. The precision needed, in the description of the amount and location, would vary from case to case.

"(f) The basis for this is the purpose of the entire exercise, to make information available as necessary to enable an identification of what product is subject to a security interest as distinguished from what is not." 9 C.F.R. § 205.207(d)-(f) (1995).

The provisions of the central filing system contemplate that certain information be contained in the financing statements, but provide for the interpretation of certain omissions and minor errors which are not seriously misleading. See 7 U.S.C. § 1631(c)(4)(I). See also *First Bank v. Eastern Livestock Co.*, 837 F. Supp. 792 (S.D. Miss. 1993) (under central filing system, proper focus should be on whether financing statement is adequate to warn prospective purchasers that there is a preexisting security interest); *Farmers & Merchants State Bank v. Teveldal*, 524 N.W.2d 874 (S.D. 1994) (bank's omission of farm product code number held not to render financing statement insufficient as against subsequently secured supplier of feed).

### *Direct Notice Requirements*

In relevant part, 7 U.S.C. § 1631(e), governing the requisite direct notice, provides that a buyer of farm products takes subject to a security interest created by the seller if, within one year before the sale of the farm products, the buyer has received from the secured party written notice of the security interest organized according to farm products. Such notice should contain: (1) the name and address of the secured party; (2) the name and address of the person indebted to the secured party; (3) the social security number of the debtor; and (4) a description of the farm products subject to the security interest created by the debtor, including the amount of such products where applicable, crop year, county or parish, and a reasonable description of the property. 7 U.S.C. § 1631(e)(1)(A)(ii). The notice provided by the secured party must also contain any payment obligations imposed on the buyer by the secured party. 7 U.S.C. § 1631(e)(1)(A)(v). The statute further provides that such notice will lapse on either the expiration period of the statement or the transmission of a notice by the secured party that the statement has lapsed, whichever occurs first. 7 U.S.C. § 1631(e)(1)(A)(iv).

The Coop admits that it received the yearly written notices from the Bank claiming a security interest in grain sold to the Coop by the Lows. The Coop argues that the notices sent by the Bank were fatally defective because they failed to provide an adequate description of the collateral; failed to describe the real property and county where the crops were located or grown; certain notices failed to specify a particular crop year; and none of the notices specified the amount of collateral subject to the Bank's security interest.

The Bank's notices were preprinted forms with space provided to insert the required information. Each form states the terms "farm products," "buyers," "commission merchants," and "selling agents" have the meanings given to them by the Act. Each of the Bank's notices clearly sets forth the name and address of the secured party, the name and address of the person indebted to the secured party, and the social security number of the debtor. Each notice states:

"The Debtor has named you as a potential buyer, commission merchant or selling agent of farm products. You are hereby given notice pursuant to the Food Security Act of 1985 that the Debtor has given a security interest to the Secured Party in (1) the farm products described below and (2) any proceeds from the sale of such farm products. This notice is effective for 1 year from the date you receive it."

Each notice has space for a description of the farm products subject to the security interest, setting forth particular space under the headings "Description," "Crop Year(s)," and "Amount." Below the space under each heading, each notice states:

"If no amount is specified for the above described farm products, the security interest covers all such farm products without limitation as to amount. The farm products described above are or may be located on (describe property and county or parish where farm products are or may be located)."

Immediately below the space provided for a description of the location of the property and county is a box, left unchecked on each notice, which states: "The security interest also covers the described farm products wherever located and is not limited to those located on the above property."

Under the heading "Payment Obligations," every notice sent by the Bank specified the following:

"You will be subject to the security interest of the Secured Party in the farm products unless the following payment obligations are satisfied: Any check or draft issued to Debtor as full or partial payment for any sale of such farm products must be made payable to both the Debtor and the Secured Party, delivered to or received by Secured Party, and finally paid."

Finally, above the signature of the Bank's authorized representative is the statement: "Satisfaction of the payment obligations will not affect the security interest of the Secured Party in proceeds of the sale of such farm products."

In the notices sent by the Bank to the Coop, the property subject to the security interest is variously described as "grain," "grain and/or beans," or "grain/beans." Despite the particular space provided on each notice to give such information, the Bank's notices filed in December 1990 and December 1991 fail to specify a crop year; none of the notices specify an amount; and none of the notices describe the real property upon which the crops were grown. The question is whether this information contained in the Bank's no-

tification to the Coop provides a sufficient description of the farm products subject to its security interests under the provisions of the Act. This court's review of that question of law is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The Act's direct notification section does not address the effect of insufficient information contained in the notice. Although several cases are cited, neither party is able to provide case law which specifically interprets the notice requirements of the direct notification method. The Coop simply argues that the Bank's notices fail to meet the specific requirements in § 1631(e)(1)(A)(ii)(IV) and it is not relevant that the Coop had actual knowledge of the Bank's security interest in the farm products. See 7 U.S.C. § 1631(d). The Coop points out that there is no express provision for "minor errors," "substantial compliance," or similar statutory guidance in the direct notice system. The Act specifically provides that a buyer shall take free of a security interest created by the seller "even though the security interest is perfected; and the buyer knows of the existence of such interest." 7 U.S.C. § 1631(d). The Bank asserts that its omissions were minor and were not misleading. It argues that the strict approach advocated by the Coop for direct notice is inconsistent with the statutory and regulatory approach under a centralized filing system. In support of their respective positions, each party refers to the statutory and regulatory requirements of a central filing system and cites cases that are not directly on point.

It is clear that the Bank did not include all the information required under § 1631(e)(1) in its notices to the Coop. A strict interpretation of the Act would dictate judgment for the Coop. If § 1631(e)(1) of the Act contemplates that a buyer of farm products does not take free of a security interest created by the seller if the secured party's notice to the buyer is substantially in compliance with the Act, the Bank is entitled to judgment.

In *Lisco State Bank v. McCombs Ranches, Inc.*, 752 F. Supp. 329, 336 (D. Neb. 1990), the United States District Court in Nebraska held that a bank failed to meet the notice requirements of either the central filing system or the direct notice method for its security interest in cattle, even though the purchaser was informed at the time of the sale that the bank had a lien against the cattle.

In that case, the court found that the bank failed to make an effort to comply with the requirements of Nebraska's central filing system after the debtor refused to sign the necessary financing statement. The court's discussion of the central filing system emphasized that its decision was limited to the particular facts involved and "not intended to address situations where a lender made a commercially reasonable attempt to comply with the provisions of the FSA." 752 F. Supp. at 339.

In addressing the bank's failure to comply with the direct notice system, the court held the bank "failed to show . . . that it met or substantially complied with the material terms of § 1631(e)(1)." 752 F. Supp. at 339. The court stated:

"There is no dispute that the defendant did not receive written notice of the lien held by the plaintiff. At most it appears from the evidentiary materials before this court that the extent of the notice to the defendant was the name of the secured party. In short, it cannot be said that the notice received by the defendant herein met with the 'direct notice' requirements of § 1631(e)(1)." 752 F. Supp. at 339.

The court noted that "the 'direct notice' provisions of the FSA [do] not contain the 'substantial compliance' language included in the definition of the EFS. Seemingly compliance with the precise terms of the Act is required." 752 F. Supp. at 339 n.6.

Others have noted that the Act appears to set different standards of compliance for the two methods of providing notice. In their article in the University of Kansas Law Review discussing the Act, Drew L. Kershen and J. Thomas Harding noted certain differences between prenotification system (PNS) notices and the central filing systems' EFS's:

"Without discussion, the Conference Committee transferred many EFS terms from [the central notification system] CNS into section 1324 PNS notices. As a result, the form of a PNS notice parallels section 1324's definition of an EFS. Unexplained anomalies between the two, however, create certain problems. These problems may or may not have been intentional, but will result in confusion. A brief review of the more important anomalies follows.
    "1.  Minor Errors—Applicability to PNS Notice and CNS Master Lists; Overlap with Mandatory Amendments
    "Using the language of Code section 9-402(8), subsection 1324(c)(4)(I) validates an EFS that substantially complies with section 1324 'even though it contains minor errors that are not seriously misleading.' No similar 'minor errors' exception

is expressly included in PNS. This omission encourages buyers, commission merchants, or selling agents who receive PNS notices with minor errors to argue that the notices are ineffective because they are not in exact compliance with section 1324. This argument should be rejected for three reasons.

"First, nothing in section 1324's legislative history suggests that the omission was intentional. If anything, legislative history strongly indicates that, when possible, the two systems should be treated to achieve uniformity and minimize uncertainty. The USDA takes this approach in handling the similar omission of 'crop year' as part of a farm products description under the definition of an EFS, even though it is a CNS master list category and one of the PNS notice description requirements.

"Second, like CNS, the purpose of PNS notice is to protect secured parties when buyers, commission merchants, and selling agents have actual notice that the farm products with which they are dealing are subject to a security interest. PNS notices containing only minor and not seriously misleading errors serve this purpose without unduly burdening recipients.

"Finally, federal courts are courts of equity. Courts do not need an express exception to do equity, when an exception can be implied from section 1324's purposes and legislative history. Code section 9-402(8) was added only 'to discourage the fanatical and impossibly refined reading' of the Code's statutory requirements. Federal courts should be able to avoid 'far out' interpretations of section 1324 without an express minor errors provision in PNS." Kershen and Hardin, *Congress Takes Exception to the Farm Products Exception of the UCC: Centralized and Presale Notification Systems*, 36 Kan. L. Rev. 383, 411-12 (1988). See also *Clear Title: A Buyer's Bonus, A Lender's Loss—Repeal of UCC § 9-307(1) Farm Products Exception by Food Security Act § 1324 [7 U.S.C. § 1631]*, 26 Washburn L. J. 71 (1986).

Congress passed the Act to shift the potential burden of loss in sales of farm products to lenders who finance farm operations, rather than have that burden imposed upon buyers who purchase farm products in the ordinary course of business. The Act provides:

"Except as provided in subsection (e) of this section and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest." 7 U.S.C. § 1631(d).

This section of the Act preempts the Kansas Uniform Commercial Code provisions and any other federal, state, or local law governing security interests in agricultural products and production of agricultural products.

In Kansas, the survival of the lender's security interest in farm products under the Act is conditioned upon direct notice to the buyer in the ordinary course of business. The adequacy and effect of notice of a security interest to a buyer of farm products is governed by provisions of the Act and is a question of law. Because the Act is unclear as to the adequacy of the notice to the buyer, we must apply the rules of statutory construction to determine whether Congress intended that the direct notice to the buyer strictly comply or substantially comply with the Act's provisions.

It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). See *State v. Gonzales*, 255 Kan. 243, 248-49, 874 P.2d 612 (1994). Congress is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results. See *Todd v. Kelly*, 251 Kan. 512, 520, 837 P.2d 381 (1992).

Congressional intention is to be determined from a general consideration of the entire act. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. See *Todd v. Kelly*, 251 Kan. at 516.

One must start with the assumption that, compared to the direct notification system to the buyer of farm products, central filing system notification would require more precise information because of its method of filing and its role in giving notice of the security interest to the public at large. Under 7 U.S.C. § 1631(c)(4)(I), the central filing system set up by the secretary of state of each state does not require strict compliance. Section 1631(c)(4)(I) states that each EFS must be in substantial compliance with the statute, and may be sufficient "even though it contains minor errors that are not seriously misleading." It is certain that Congress intended that buyers receive notice of a lender's security interest in farm products. It is logical and reasonable to conclude that Congress did not intend that buyers who receive direct notice containing minor omissions and errors which are not

misleading could claim that the notice was ineffective because it did not strictly comply with the requirements of the Act.

The notices sent by the Bank to the Coop are not in strict compliance with the direct notice requirements of the Act. Adopting the Coop's argument that direct notices must strictly comply with the Act's notice requirements would allow the Coop to disregard the Bank's notice, even though the Coop was aware of the Bank's security interest in the farm product. Such an interpretation would not serve the legislative intent of the Act.

The Bank's notices were in substantial compliance with the direct notice requirements of the Act and did not mislead the Coop. When the Coop received the notices, it questioned their effectiveness, but was not misled by them. Contrary to the Coop's assertion that the Bank's notices of its security interest were insufficient, the Bank's notices substantially complied with the Act's direct notice requirements and were sufficient to place the Coop on notice of its security interest in the crops. Because the district court correctly determined that the Bank's notices of the security interest to the Coop were sufficient, we need not determine if the district court erred in finding that the Coop was a buyer as defined by the Act.

Affirmed.