(19 P.3d 188)
No. 85,274

AG SERVICES OF AMERICA, INC., *Appellee,* v. DEBRUCE GRAIN, INC., *Appellant,* and SHORE LTD.; STARLA SHORE; STEVEN SHORE, INC.; RANDALL R. SHORE; CARL DAVISON FARMS, INC.; HARTLESS FARMS, INC., *Appellees.*

Opinion filed February 9, 2001.

*Mark D. Calcara,* of Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., of Great Bend, for appellant.

*Charles E. Owen, II,* of Charles E. Owen, II, P.A., of Garden City, for appellee Ag Services of America, Inc.

Before MARQUARDT, P.J., GREEN, J., and BUCHELE, S.J.

MARQUARDT, J.: This is a controversy between DeBruce Grain, Inc. (DeBruce), purchaser of corn under a contract for future delivery from Shore, Ltd. (Shore), and Ag Services of America, Inc. (Ag Services), which has a perfected security interest in Shore's corn. On appeal, DeBruce argues that the trial court erred in granting judgment to Ag Services. We affirm.

On February 1, 1995, Shore, a farming partnership, entered into a contract with DeBruce whereby DeBruce agreed to buy 30,000

bushels of corn from Shore for $2.735 per bushel. Delivery was to take place in December 1995.

On March 30, 1995, Shore executed a promissory note and security agreement with Ag Services which granted Ag Services a security interest in all of Shore's equipment, accounts, farm products, crops, and other property. On May 9, 1995, Ag Services advanced Shore $132,000 to enable Shore to pay the expenses of growing its 1995 crops, which included the corn to be delivered to DeBruce. Ag Services perfected its security interest by filing its financing statements with the Secretary of State. On June 12, 1995, Ag Services notified DeBruce of its security interest in Shore's farm products as required by the provisions of the Federal Food Security Act, 7 U.S.C. 1631 (1994).

In December 1995, Shore delivered 8,288.04 bushels of corn to DeBruce and notified DeBruce that it would make no further deliveries of corn under their contract. The amount due to Shore for the delivered corn was $22,667.68. DeBruce bought corn on the open market for $21,870.47 to make up for the balance of what Shore had contracted to deliver to DeBruce. Instead of issuing a check to Ag Services and Shore for $22,667.68, DeBruce deducted the amount it paid for the corn purchased on the open market and issued Shore and Ag Services a check for $797.21.

Ag Services sued DeBruce for $21,870.47, claiming that it acquired an interest in Shore's corn under the security agreement and that its security interest was superior to DeBruce's right of setoff in Shore's corn. The case was tried on stipulated facts. The trial court found that Ag Services' security interest in Shore's corn was superior to DeBruce's right of setoff and granted judgment to Ag Services in the amount of $21,870.47, plus interest. DeBruce timely appeals.

On appeal, DeBruce contends that the trial court erred in finding that Ag Services' security interest was superior to DeBruce's contractual right of setoff. This issue has not been addressed by the appellate courts of Kansas, and we have been unable to find cases from other jurisdictions in which appellate courts have ruled on the issue.

Barkley Clark's treatise on the Uniform Commercial Code analyzed an example that is similar to the issue raised by DeBruce:

"Farmer forward-contracts with a local elevator to deliver 5,000 bushels of wheat presently growing on his farm. The wheat is to be delivered to the elevator at harvest. Shortly thereafter, Farmer grants a security interest in the growing wheat to Country Bank, which properly perfects by filing a local financing statement. After the wheat is harvested, but before delivery to the elevator, Farmer goes into default on his Country Bank loan. Both the local elevator and Country Bank claim priority to the wheat.

"In this forward-contract situation, Country Bank has a strong argument that Farmer had sufficient rights in the collateral for the security interest to attach. Country Bank would contend that Farmer had not contracted to sell particular wheat but only to deliver 5,000 bushels of wheat, which could be bought in the open market. More significantly, since wheat is fungible and not unique, the local elevator never had a right to specific performance under § 2-716; it had only a cause of action for damages. Therefore, Farmer still had rights in the collateral at the time the security interest was granted and before delivery, with power to prevail over the competing purchaser under § 9-201." Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 8.05[2][b], pp. 8-48-49 (rev. ed. 1994) (hereinafter referred to as The Law of Secured Transactions).

No party questions Ag Services' perfected security interest in the corn that Shore delivered to DeBruce and that DeBruce is a buyer of farm products. The only question is whether Ag Services' security interest in Shore's corn is superior to DeBruce's right of setoff pursuant to its contract with Shore. Clark hypothesizes in his example that the bank probably had priority over the elevator for the following reasons:

"Reinforcing Country Bank's argument [that it has priority] is § 2-402(1), which strongly suggests that unsecured creditors of a seller of goods (which under § 2-107[2] include growing crops sold apart from the realty) prevail over the rights of the buyer to recover the goods, at least in cases where the goods are not unique. If such priority is given to unsecured creditors of the seller, Article 9 secured creditors would seem to qualify even more strongly. In fact, § 2-402(3)(a) makes it clear that nothing in Article 2 should be deemed to impair the rights of Article 9 secured creditors. To top it off, § 9-307 subordinates a buyer of crops in ordinary course to a security interest created by his seller. In short, Country Bank will probably have priority over the local elevator." The Law of Secured Transactions ¶ 8.05[2][b], p. 8-49.

The parties agree that under DeBruce's contract with Shore, DeBruce had certain rights. DeBruce and Ag Services stipulated

"[t]hat *pursuant to the Contract,* upon default in the delivery of the contracted for grain, DeBruce had the contractual right to buy in corn in the open market for the account of Shore Ltd. to cover the undelivered grain and to set off the additional costs against the proceeds due Shore Ltd. for grain delivered." (Emphasis added.)

The stipulation does not address how such rights are affected by Ag Services' perfected security interest in the same corn.

Once the corn was sold to DeBruce, Ag Services had a claim to the proceeds because of its security interest and the notice that it had given DeBruce. Under K.S.A. 84-9-306(1), proceeds are "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." K.S.A. 84-9-306(2) states:

"Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

K.S.A. 84-9-307(1) allows buyers of goods in the ordinary course of business to take free of a security interest; however, persons buying farm products are specifically not afforded the same protection. DeBruce took delivery of Shore's corn with knowledge of Ag Services' security interest. The notice that Ag Services sent to DeBruce in June 1995 stated:

"The payment obligation imposed upon you, as buyer, commission merchant or selling agent to or through whom the farm products are sold which is a condition for waiver or release by the Secured Party of the security interest of the Secured Party in the farm products described above is as follows: issuance of a check in the *full amount of the sales proceeds of the farm products* jointly in the names of: (1) the Secured Party set forth above [Ag Services], as one party, and (2) the Debtor or Debtors set forth above [Shore] as the other party. You are not authorized to deduct from such sales proceeds costs incurred to market or transport the farm products." (Emphasis added.)

Ag Services did not give DeBruce authorization for a setoff.

DeBruce claims that its rights are derived from the forward contract and not from Ag Services' notice. DeBruce claims that Ag Services was transformed into an account debtor when the corn was sold to DeBruce and that K.S.A. 84-9-318(1)(a) applies. DeBruce states: "Unless an account debtor has made an enforce-

able agreement not to assert defenses or claims arising out of a sale, the assignee is subject to all of the contractual terms between the account debtor and the assignor and any defense or claim arising therefrom." The Kansas Comment to the statute notes of K.S.A. 84-9-318 states:

"This subsection subjects the rights of the assignee of chattel paper or accounts to defenses of the account debtor arising out of the contract . . . under subsection (1)(a). For example, if the account debtor had no duty to pay the assignor because the goods delivered were defective, this defense could be raised against the assignee, who steps into the assignor's shoes for this purpose."

We agree that if defective corn had been delivered, Ag Services would only be entitled to the value of the corn that was delivered; and if no corn had been delivered, Ag Services would have no claim against DeBruce. We do not agree that K.S.A. 84-9-318 applies to this case where DeBruce asserts that its claim for lost profits should take priority over the secured creditor who advanced the funds to grow the corn.

We fail to see how Ag Services is transformed from a secured party into an assignee of an account debtor. K.S.A. 84-9-317 clearly states: "The mere existence of a security interest or authority given to the debtor to dispose of or use collateral does not impose contract or tort liability upon the secured party for the debtor's acts or omissions."

None of the cases cited by DeBruce for the proposition that Ag Services is nothing more than an assignee of account debtor Shore deal with the sale of farm products. The cases deal with situations where a specific assignment of the right had been executed, and that is not the fact in the instant case. In *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 76 F. Supp. 2d 1113 (D. Kan. 1999), even where there was an assignment of factory receivables, the Kansas United States District Court held that K.S.A. 84-9-318 did not apply because the debtor's obligation to pay was merely a collateral agreement in which the method of payment was established. 76 F. Supp. 2d at 1121-22.

Ag Services did all that was required under Kansas law and the Food Security Act in perfecting its security interest and notifying DeBruce of its interest in Shore's corn. We hold that a buyer of

farm products in the ordinary course of business is not entitled to use setoffs it has against the seller to diminish the secured party's interest in the farm products. Ag Services is not liable for the claims that DeBruce has against Shore. Ag Services' right to the payment for the corn delivered to DeBruce by Shore is not subject to a setoff by DeBruce. Because DeBruce paid Ag Services only for the difference between the payment for corn purchased under the contract and the value of the delivered corn, Ag Services is entitled to $21,870.47, which is the balance of what was owed on the corn delivered to DeBruce. The trial court did not err in awarding judgment to Ag Services.

Affirmed.

GREEN, J., dissenting:

Barkley Clark's hypothesis, from his treatise entitled The Law of Secured Transactions Under the Uniform Commercial Code (rev. ed. 1994) which is cited by the majority in support of their position, is factually distinguishable from the present case. Clark specifically states in his hypothesis that the wheat was not delivered to the elevator. Clark notes: "After the wheat is harvested, *but before delivery to the elevator,* Farmer goes into default on his Country Bank loan." (Emphasis added.) § 8.05. Clark also states in his hypothesis that the "Farmer still had rights in the collateral at the time the security interest was granted and *before delivery. . . .*" (Emphasis added.) § 8.05. Clearly, the nondelivery of the wheat to the elevator was a key element in Clark's hypothesis. Unlike Clark's hypothesis, the farmer in the present case did deliver the grain crop to the elevator. This factual difference between Clark's hypothesis and the present case is significant.

Once DeBruce took delivery of the corn in which Ag Services had a security interest and gave Shore its promise to pay, DeBruce became an account debtor and Ag Services was the assignee of the account by virtue of its security agreement and by operation of K.S.A. 84-9-306. K.S.A. 84-9-306(2) gives a secured party an automatic right to proceeds from the disposition of collateral, unless otherwise agreed.

Ag Services' claim to the proceeds is based on the forward contract between DeBruce and Shore. For example, the notice that Ag Services sent to DeBruce under the Federal Food Security Act, 7 U.SC. 1631 (1994), stated that DeBruce had a "payment obligation" to issue a check in the full amount of the "sale proceeds" jointly in the names of Ag Services and Shore. Furthermore, the parties' stipulated that Ag Services was claiming the proceeds under the forward contract.

The stipulation stated:

"That on December 20, 1995, Eugene Knoploh, credit manager of Ag Services forwarded a letter to Mike Bernard reminding DeBruce of its secured interest in the Contract proceeds and demanded payment of the proceeds from the sale of 8,288 bushels of corn delivered pursuant to the Contract at a price of $2.73 1/2 per bushel. . . ."

Under K.S.A. 84-9-318(1)(a), the rights of the assignee are subject to all the terms of the contract between the account debtor and the assignor, including any claim or defense arising from it, unless the account debtor has agreed not to raise its claim or defense. For example, an assignee under K.S.A. 84-9-206 could insist that a waiver-of-defenses clause be added to the sales contract. If the account debtor agrees to such a clause, the account debtor waives its right to raise these defenses against the assignee. No such agreement existed in this case.

Because Ag Services' claim to the proceeds is based on the forward contract, DeBruce is entitled to raise any claims or defenses against Ag Services that it could raise under its contract with Shore. See K.S.A. 84-9-318(1)(a). First, the parties stipulated that Shore told DeBruce that "it (Shore) would default on delivery of the remaining 21,711.96 bushels of corn as required by the Contract." Second, the parties stipulated "[t]hat Shore Ltd. never delivered the balance of the grain and was in default under the terms of the Contract." Third, the forward contract gave DeBruce the right to purchase corn on the open market to make up for the amount of corn Shore failed to deliver. In fact, DeBruce and Ag Services stipulated

"[t]hat pursuant to the Contract, upon default in the delivery of the contracted for grain, DeBruce had the contractual right to buy in corn in the open market

for the account of Shore Ltd. to cover the undelivered grain and to set off the additional costs against the proceeds due Shore Ltd. for grain delivered."

Because DeBruce's claims and defenses arise from the forward contract and not from Ag Services' notice, K.S.A. 84-9-318(1)(b) is not applicable. The trial court relied on *First Nat'l Bank & Tr. v. Miami Co. Co-op Ass'n,* 257 Kan. 989, 897 P.2d 144 (1995), for its holding that Ag Services' security interest is superior to "the right of setoff that exists between DeBruce Grain, Inc., and Shore Limited." Nevertheless, the *Miami County* case is distinguishable from the present case. First, the defenses under K.S.A. 84-9-318 were never raised in the proceeding. Second, if the co-op had raised a defense, K.S.A. 84-9-318(1)(b) would have controlled. Under this subsection, the co-op's defense would not have prevailed because the defense arose out of a pre-existing debt obligation which was unrelated to the current sale of grain pledged to the secured creditor. No evidence was presented that the co-op's claim defense arose before the secured creditor gave notice of its security interest to the co-op. On the other hand, DeBruce's defense and claim arose out of the forward contract and were governed by K.S.A. 84-9-318(1)(a).

Although not mentioned by DeBruce, DeBruce should also prevail under K.S.A. 84-2-712(2) and K.S.A. 84-2-717. K.S.A. 84-2-712(2) allows a buyer to recover the difference between the cost of cover and the contract price following a seller's breach. K.S.A. 84-2-717 permits a buyer to deduct all or any part of the damages resulting from any breach of the contract from any part of the unpaid purchase price after notifying the seller of its intention to do so. DeBruce sent a letter to Randy Shore stating DeBruce's intention to cover the defaulted portion of the corn contract. No formality of the notice is required and any language which reasonably indicates the buyer's reason for withholding its payment is sufficient. As a result, DeBruce's notice of its intention to cover the defaulted portion of the corn contract satisfies this requirement. See *Southern Concrete Products Co.. v. Martin,* 126 Ga. App. 536, 191 S.E.2d 314 (1972) (notice requirement was satisfied by buyer's complaint about inferior quality of the delivered goods);

and *Puritan Manufacturing, Inc., v. I Klayman & Company*, 379 F. Supp. 1306, 1313 (E.D. Pa. 1974) (notice requirement was met by buyer's letter of complaint).

See also *Matter of McDonald*, 224 Bankr. 862 (Bankr. S.D. Ga. 1998) (where a Chapter 12 debtor-farmer breached his contract by delivering to market only 106 of the 300 bales of cotton contracted for, buyer was entitled to recoup its cover damages from contract price despite security interest of bank that had financed the crop).

In summary, the rights of the assignee, Ag Services, are subject to the claims that the account debtor, DeBruce, could have asserted against the assignor, Shore. DeBruce suffered a $22,667.68 loss because Shore failed to deliver the remaining 21,711.96 bushels of corn as required by the forward contract. Requiring DeBruce to pay $22,667.68 and to lose 22,667.68 in the same transaction does not seem right. Because DeBruce paid Ag Services for the difference between the cost of corn covered and the value of the corn delivered, Ag Services has received the amount it was entitled to by reason of its security interest in the corn. As a result, I would reverse.