# ILLINOIS OFFICIAL REPORTS

---

### *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836

---

| | |
|---|---|
| Caption in Supreme Court: | STATE BANK OF CHERRY, Appellant, v. CGB ENTERPRISES, INC., Appellee. |
| Docket No. | 113836 |
| Filed | February 22, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant grain elevator sold a farmer's crops and paid the receipts directly to him, his creditor, plaintiff bank, had no claim for failure to protect its security interest where the notices which it furnished under the Food Security Act of 1985 failed to strictly comply with the Act by failing to specify the county in which the crops were located. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of La Salle County, the Hon. Joseph P. Hettel, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Anthony C. Raccuglia and Bradley P. Popurella, of Peru, for appellant.<br><br>Jeffrey Alan Ryva, of Husch Blackwell LLP, of Peoria, for appellee. |

Justices                    JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Karmeier, and Theis concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion, joined by Justice Burke.


## OPINION

¶ 1        Plaintiff, State Bank of Cherry (the secured party), filed suit against defendant, CGB Enterprises, Inc. (the buyer), claiming that defendant failed to protect plaintiff's security interest in crops defendant purchased from a third-party debtor. Defendant filed a motion to dismiss plaintiff's complaint, arguing that plaintiff's notices of security interest to defendant were insufficient and failed to strictly comply with section 1631(e) of the Food Security Act of 1985 (the Act) (7 U.S.C. § 1631(e) (2006)). The circuit court of La Salle County denied the motion to dismiss. Plaintiff then filed a motion for summary judgment and defendant filed a cross-motion for judgment on the pleadings. The circuit court granted plaintiff's motion for summary judgment and denied defendant's motion for judgment on the pleadings. The appellate court reversed the circuit court, holding that plaintiff failed to strictly comply with the requirements for direct notice of security interest under the Act. 2012 IL App (3d) 100495. This court granted leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). For the following reasons, we affirm the judgment of the appellate court.


¶ 2                              BACKGROUND

¶ 3        Plaintiff is an Illinois banking corporation with its principal place of business in Cherry, Bureau County, Illinois. Defendant is a corporation with a local office located in Princeton, Bureau County, Illinois. Defendant also maintains a grain elevator in La Salle County, Illinois. Plaintiff obtained a lien upon the crop proceeds of debtor Lawrence Rogowski, pursuant to a promissory note executed by Rogowski in favor of plaintiff.[1] Plaintiff had a security interest in Rogowski's crops and any proceeds from the sale of said crops. Plaintiff, in its complaint filed February 26, 2008, alleged that it gave defendant direct notice of its security interest in Rogowski's crops via letters sent to defendant on April 5, 2005, and June 15, 2006. Defendant sold Rogowski's crops and thereafter delivered to Rogowski proceeds from the sale of the crops in the amount of $35,617.87 by checks payable directly to Rogowski.

¶ 4        In its complaint, plaintiff alleged that the sale of Rogowski's crops occurred during the period covered by plaintiff's lien, and thus any proceeds for the sale of the crops were subject to plaintiff's security interest. Plaintiff alleged that defendant failed to protect plaintiff's

_____

[1]Rogowski is not a party to these proceedings.

-2-

security interest by making payments directly to Rogowski without recognition of plaintiff's security interest in Rogowski's crops. Plaintiff noted that in January 2008 it obtained a deficiency judgment against Rogowski in the amount of $53,557, which remained unsatisfied. Plaintiff demanded payment from defendant.

¶ 5 Attached to plaintiff's complaint were the two notices of its security interest in Rogowski's crops that plaintiff delivered to defendant. The documents are identical, except that one document is dated April 4, 2005, and relates to the crop years "2004 & 2005" and the other document is dated June 14, 2006, and relates to the crop years "2005 & 2006." The notice is directed to "Consolidated Grain and Barge" (defendant) and defendant's address is included at the top of the notice. The notice states that it is in regard to debtor "Lawrence Rogowski" and contains Rogowski's social security number and address. The notice contains the name of the secured party, "State Bank of Cherry" (plaintiff), as well as plaintiff's address. Underneath the names and addresses of the relevant parties the notice states the following:

> "The Debtor has named you as a potential buyer, commission merchant, or selling agent of farm products. You are hereby given notice pursuant to the Food Security Act of 1985 that the Debtor has given a security interest to the Secured Party in (1) the farm products described below and (2) any proceeds from the sale of such farm products. This notice is effective for 1 year from the date you receive it."

¶ 6 Underneath this paragraph are the categories of property in which the secured party has a security interest. The three categories are "Agricultural Commodities," "Livestock," and "Products of Crops or Livestock." For "Agricultural Commodities" and "Products of Crops or Livestock," there are three columns entitled "Description," "Crop Year(s)," and "Amount." For the "Livestock" category, there are only two columns, "Description" and "Amount." Only the "Agricultural Commodities" category contained listed property. Under the "Description" column was typed "ALL GRAIN ON HAND. ALL GROWING CROPS." Under the "Crop Year(s)" column was typed "2004 and 2005" for the first notice and "2005 and 2006" for the second notice. The "Amount" column was left blank. No property was listed or described in the "Livestock" or "Products of Crops or Livestock" categories.

¶ 7 Under the categories of secured property, the notice states the following:

> "If no amount is specified for the above described farm products, the security interest covers all such farm products without limitation as to amount.

> The farm products described above are or may be located on (describe property and county or parish where farm products are or may be located): ***[.]"

¶ 8 The space underneath that section was left blank. However directly underneath the blank space was written: "The security interest also covers the described farm products wherever located and is not limited to those located on the above property." A box immediately to the left of that sentence was checked with a typed "X."

¶ 9 Finally, at the very bottom of the notice, is a section entitled "Payment Obligations." The section states:

> "You will be subject to the security interest of the Secured Party in the farm products unless the following payment obligations are satisfied:

-3-

Any check or draft issued to Debtor as full or partial payment for any sale of such farm products must be made payable to both the Debtor and the Secured Party, delivered to or received by the Secured Party, and finally paid. [A box next to this sentence is checked with a typed 'X.']

If property other than checks or drafts is given as full or partial payment for the sale of such farm products, you must deliver a written notice describing the property in detail to the undersigned at the address stated above within three days after such sale. [A box next to this sentence is checked with a typed 'X.']"

¶ 10 The notice concludes with a sentence stating: "Satisfaction of the payment obligations will not affect the security interest of the Secured Party in proceeds of the sale of such farm products."

¶ 11 Defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)) on April 29, 2008. Defendant argued the notices provided to defendant by plaintiff were insufficient to put defendant on notice of plaintiff's security interest in Rogowski's crops. Defendant noted that the notices themselves were specifically made pursuant to section 1631(e) of the federal act, which required a description of the farm products subject to the security interest created by the debtor, including "the name of each county or parish in which the farm products are produced or located." 7 U.S.C. § 1631(e)(1)(A)(ii)(IV) (2006). Citing to the federal appellate court case *Farm Credit Midsouth, PCA v. Farm Fresh Catfish Co.*, 371 F.3d 450 (8th Cir. 2004), which interpreted the notice provision of the Act, defendant argued that Congress intended strict compliance with the direct notice provision. Defendant argued that under strict compliance, plaintiff's notices were deficient because they did not mention the county where the farm products were located.

¶ 12 Plaintiff filed its response to the motion to dismiss on June 17, 2008. Plaintiff argued that its direct notice of security interest in Rogowski's crops gave defendant adequate notice of an obligation on defendant's part to protect plaintiff's security interest. In its response, plaintiff stated that Illinois is a direct notice state, as opposed to a central filing state (direct notice being written notice sent directly to the buyer by the secured party and central filing notice being a central location where an effective financing statement is kept on file that apprises potential buyers of a security interest in property). Plaintiff argued that, after the federal act was adopted in 1985, Illinois adopted its own version based on article 9 of the Uniform Commercial Code so as not to conflict with the federal act. Plaintiff claimed defendant was aware of plaintiff's lien on Rogowski's crops. Plaintiff argued that, under Illinois case law, substantial compliance was all that was required to give satisfactory notice of a secured party's interest to a buyer. Plaintiff, recognizing the conflict between federal and Illinois case law on strict compliance versus substantial compliance, argued that Illinois courts are not bound by the decisions of lower federal courts, only the United States Supreme Court and, thus, under Illinois precedent, substantial compliance was all that was required.

¶ 13 Following in-court argument, the circuit court denied defendant's motion to dismiss on July 29, 2008. In denying the motion, the circuit court stated that it believed the crucial issue was whether direct notice required strict or substantial compliance. The circuit court stated

-4-

that, if *Farm Fresh* were binding on Illinois courts, "there is no question where the ruling of this court would be," as it found the factual situation in *Farm Fresh* identical to the instant case and the Eighth Circuit's reasoning on statutory construction to be "dead on." However, if the Illinois appellate court case advocated by plaintiff, *First National Bank in Toledo v. Effingham-Clay Service Co.*, 261 Ill. App. 3d 890 (1994), applied, then only substantial compliance would be required and the court would be bound to deny the motion.

¶ 14    In determining which case to follow, the circuit court discussed Illinois Supreme Court jurisprudence on the authority of lower federal court opinions, stating:

> "But ultimately, the Illinois Supreme Court at this point in time has basically stated that this precedent of the Federal Courts—and this is surprising to me—is not binding—it is persuasive, but not binding—which frankly is a bit confusing when we are interpreting a Federal statute that Federal precedents would be persuasive and not binding."

¶ 15    Ultimately, the circuit court determined it was bound to follow the decision of the Illinois appellate court, concluding:

> "But I think the ultimate conclusion here is that I am first bound by the opinions of the Third District Appellate Court if they are in conflict with other Appellate Districts and then go to the other Appellate Districts and obviously to our own Supreme Court. And while I agree that the 8th District—8th Circuit opinion is very well-reasoned, I think that I am bound to follow the Effingham-Clay Service case out of the Fourth District, 1994, even though as a—and counsel, I understand your argument and in fact it makes complete sense—there is not much you have said that I can dispute frankly. I am just trying to find out where or what court decision I need to follow.
>
> * * *
>
> I am relying on the case of First National Bank v. Effingham-Clay. I think that case states that when this particular question is asked, the answer to the question is substantial compliance and not strict compliance. And based on that, counsel, I am going to deny your motion to dismiss."

¶ 16    The circuit court denied defendant's motion to reconsider on October 21, 2008. Defendant filed its answer and affirmative defenses to plaintiff's complaint on January 29, 2009, again arguing insufficient notice under the Act. On April 29, 2009, plaintiff filed its motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2008)). Plaintiff argued that defendant admitted to all the allegations in plaintiff's complaint and that defendant's only defense was that it was not served with sufficient notice of plaintiff's security interest. Plaintiff noted that the circuit court rejected defendant's argument in denying the motion to dismiss. Further, defendant failed to respond to certain Requests to Admit concerning the factual allegations of plaintiff's complaint. Plaintiff concluded that it was entitled to summary judgment because no genuine issue of material fact existed.

¶ 17    Defendant filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2008)) on May 18, 2009. Defendant

reiterated its argument that the case was governed by federal law, specifically the Act. Defendant argued that the Act requires strict compliance in serving direct notice upon a buyer and that plaintiff, in this instance, did not strictly comply with the Act. Defendant argued the court erred in its earlier determination that Illinois cases controlled over the federal case, and that it was entitled to judgment on the pleadings since plaintiff's notice to defendant of its security interest was insufficient. On September 18, 2009, the circuit court granted plaintiff's motion for summary judgment and denied defendant's motion for judgment on the pleadings. Defendant's motion to reconsider was denied June 8, 2010.

¶ 18    The appellate court reversed the judgment of the circuit court. First, the appellate court found that "the federal statute controls under the express terms of the state statute and under the supremacy clause of the United States Constitution." 2012 IL App (3d) 100495, ¶ 14. The court then wrote that while it was not bound by the Eighth Circuit's interpretation of the Act in *Farm Fresh*, it did find that case "to be the better-reasoned decision, and highly persuasive." 2012 IL App (3d) 100495, ¶ 18. Applying *Farm Fresh*, the appellate court held:

> "Under the Eighth Circuit's construction of the statute, strict compliance is required. Plaintiff's notice to defendant had to list the county in which the farm products were or may be located to give effective notice to defendant of its security interest in the crops." 2012 IL App (3d) 100495, ¶ 26.

¶ 19    The appellate court concluded that plaintiff's notices failed to comply with section 1631(e) of the Act and, therefore, defendant took free of the security interest created by the seller, even though defendant knew of its existence. 2012 IL App (3d) 100495, ¶ 29.

¶ 20    Justice Holdridge dissented, agreeing with the majority that the only issue was whether strict or substantial compliance with the Act was necessary and that the court was not bound by the Eighth Circuit's holding in *Farm Fresh*, but disagreeing with the majority contention that *Farm Fresh* was "highly persuasive." 2012 IL (App) 3d 100495, ¶ 35 (Holdridge, J., dissenting). He argued that other courts had held that substantial compliance was all that was necessary for notice under the Act. He further argued that there was "little logic" in Congress's treating direct notice and central filing notice differently, writing that there was "no rule of statutory construction which require[d] a reviewing court to conclude that the legislature must have intended an illogical result" and "[t]here is no logical basis for concluding that Congress intended a secured creditor could substantially comply with constructive notice provisions, but would have to strictly comply with actual notice provisions." 2012 IL App (3d) 100495, ¶¶ 37, 38 (Holdridge, J., dissenting).

¶ 21                                    ANALYSIS

¶ 22    The main issue on appeal is whether the direct notice provision of section 1631(e) of the Food Security Act of 1985 (7 U.S.C. § 1631(e) (2006)) requires strict or substantial compliance. This is a matter of statutory interpretation, which this court reviews *de novo*. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. Once we determine the proper compliance standard, we must then decide whether the circuit court erred in granting plaintiff's motion for summary judgment and determine whether plaintiff's notice to defendant was sufficient to satisfy the direct notice requirements under the Act.

¶ 23    As a preliminary matter, we make clear that federal law applies in this case and we will be analyzing the notice requirements under section 1631(e) of the Act. In the circuit court and appellate court, plaintiff argued that, under the Illinois security interest notice exceptions, substantial compliance was all that was required. The appellate court, however, concluded that "the federal statute controls under the express terms of the state statute and under the supremacy clause of the United States Constitution." 2012 IL App (3d) 100495, ¶ 14. Further, on appeal in this court plaintiff concedes that there is "no dispute that section 1631 of the Food Security Act of 1985 *** applies to the instant transaction" and that "[t]he sole issue in dispute is whether 'strict compliance' or 'substantial compliance' with the Act is required."[2] Further, plaintiff's notice to defendant explicitly states: "You are hereby given notice pursuant to *the Food Security Act of 1985* that the Debtor has given a security interest to the Secured Party in (1) the farm products described below and (2) any proceeds from the sale of such farm products." (Emphasis added.) Therefore, we confine our analysis to the notice requirements of section 1631(e) of the Act.

¶ 24                    I. Substantial or Strict Compliance With Direct
                                Notice Under the Act

¶ 25    Plaintiff argues that, under the Act, only substantial compliance is required for direct written notice to the buyer of a secured party's security interest. Defendant counters that the Act requires strict compliance for direct notice. To answer this question, we must analyze the notice provision of the Act and the federal court decisions interpreting said notice provision.

¶ 26                    A. The Notice Requirements of the Act

¶ 27    First, the Act states that if a secured party does not provide sufficient notice to a buyer, the buyer may purchase the secured property free of the secured party's security interest:

> "Except as provided in subsection (e) of this section and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take

---

[2]We find *First National Bank in Toledo v. Effingham-Clay Service Co.*, 261 Ill. App. 3d 890 (1994), to be inapplicable to the issue at hand. The appellate court found that direct notice from a secured party to a buyer of the secured party's security interest in crops was sufficient even though the notice did not set forth the county where the crops were grown and failed to provide a "reasonable description of the property." (Internal quotation marks omitted.) *Effingham-Clay*, 261 Ill. App. 3d at 891-93. The court specifically noted the parties cited no case law and analyzed the sufficiency of the notice pursuant only to portions of the Illinois secured transactions statute (810 ILCS 5/9-402, 9-307.1 (West 1992)). The case was decided 10 years before the Eighth Circuit's decision in *Farm Fresh* and contained no mention of the Food Security Act. As noted above, the appellate court correctly concluded, and plaintiff conceded in its brief, that federal law via the Act controls this case. Further, the notices sent by plaintiff to defendant at issue specifically state they were made pursuant to the Act.

free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest." 7 U.S.C. § 1631(d) (2006).

¶ 28    However, if the secured party provides sufficient notice to the buyer, the buyer purchases the secured property subject to the secured party's security interest. Section 1631(e) of the Act provides for how a secured party may put a buyer on notice:

"A buyer of farm products takes subject to a security interest created by the seller if—

(1)(A) within 1 year before the sale of the farm products, the buyer has received from the secured party or the seller written notice of the security interest organized according to farm products that—

(i) is an original or reproduced copy thereof;

(ii) contains,

(I) the name and address of the secured party;

(II) the name and address of the person indebted to the secured party;

(III) the social security number, or other approved unique identifier, of the debtor or, in the case of a debtor doing business other than as an individual, the Internal Revenue Service taxpayer identification number, or other approved unique identifier, of such debtor; and

(IV) a description of the farm products subject to the security interest created by the debtor, including the amount of such products where applicable, crop year, and the name of each county or parish in which the farm products are produced or located[.³]" 7 U.S.C. § 1631(e)(1)(A)(ii) (2006).

¶ 29    These are the requirements for direct notice. The Act also provides for notice through a state's establishment of a "central filing system." Under a central filing system, a buyer of farm products takes subject to a security interest created by the seller if:

"(2) [I]n the case of a farm product produced in a State that has established a central filing system—

***

(B) the secured party has filed an effective financing statement or notice that covers the farm products being sold[.]" 7 U.S.C. § 1631(e)(2)(B) (2006).

¶ 30    Section 1631(e) provides a definition for "effective filing statement" that contains a description of the notice requirements that is almost identical to that of direct notice, except for allowing that the effective filing statement need only "*substantially* compl[y] with the requirements of this subparagraph [the subparagraph contains all the requirements needed for effective notice, mirroring the various requirements for direct notice] *even though it*

---

³Hereinafter we will refer to the county or parish where the farm products are "located," as opposed to "produced or located," for the sake of simplicity and readability.

*contains minor errors that are not seriously misleading.*" (Emphases added.) 7 U.S.C. § 1631(c)(4)(H) (2006).

¶ 31    Illinois is a direct notice state and does not provide for central filing notice. *In re Printz*, 478 B.R. 876, 883 n.4 (Bankr. C.D. Ill. 2012). The type of notice that plaintiff provided to defendant of plaintiff's security interest in Rogowski's crops was direct notice.

¶ 32    B. Federal Court Interpretation of Federal Statutes

¶ 33    We now turn to the proper analysis for this court's interpretation of the Act. When interpreting federal statutes, we look to the decisions of the United States Supreme Court and federal circuit and district courts. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141 (2006). United States Supreme Court interpretation of federal law is clearly binding on this court. However, in the absence of a United States Supreme Court decision, the weight this court gives to federal circuit and district court interpretations of federal law depends on factors such as uniformity of law and the soundness of the decisions. We addressed this issue in *Sprietsma v. Mercury Marine*, 197 Ill. 2d 112, 119-20 (2001), *reversed on other grounds by Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002), writing:

"Although we have stated in the past that the decisions of federal courts interpreting a federal statute are controlling on Illinois courts (see *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335 (1996)), this overstates the degree of deference this court must pay to federal decisions. Thus, in *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 381 (1999), we elected to follow the precedent of the Seventh Circuit with regard to its interpretation of the Federal Employer's Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (1994)), because we found the Seventh Circuit analysis to be 'reasonable and logical.' More recently, however, we declined to follow Seventh Circuit precedent in a case involving a preemption issue under FELA when there was a split of authority among the federal circuits and we believed the Seventh Circuit case was wrongly decided. See *Weiland v. Tectronics, Pacing Systems, Inc.*, 188 Ill. 2d 415, 423 (1999).

Nevertheless, as we have repeatedly recognized, uniformity of decision is an important consideration when state courts interpret federal statutes. See *Weiland*, 188 Ill. 2d at 422; *Wilson*, 187 Ill. 2d at 383; *Busch*, 169 Ill. 2d at 335. *** In the absence of a decision of the United States Supreme Court, which would definitively answer the question presented by this case, we elect to give considerable weight to the decisions of federal courts of appeals and federal district courts that have addressed this issue." *Sprietsma*, 197 Ill. 2d at 119-20.

¶ 34    Since *Sprietsma*, our cases and those of the appellate court have considered federal circuit court decisions persuasive, but not binding in the absence of a decision of the United States Supreme Court. *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 835 (2004). However, this court has consistently recognized the importance of maintaining a uniform body of law in interpreting federal statutes if the federal courts are not split on an issue. See *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 21 (2011) ("This court has recognized that, in construing federal laws, decisions of the federal courts are binding upon this court, to the

end that such laws may be given uniform application."); *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 40 (2010) ("Moreover, it is well settled that uniformity of decision is an important consideration when state courts interpret federal statutes, and we will give 'considerable weight' to the decisions of federal courts that have addressed preemption under section 2 of the FAA."); *People v. Williams*, 235 Ill. 2d 178, 187 (2009) ("Additionally, in the interest of a uniform body of precedent, we will give 'considerable weight' to the decisions of federal courts that have addressed preemption of laws protecting copyrightable material. [Citation.] As we have repeatedly recognized, uniformity of decision is an important consideration when state courts interpret federal statutes." (citing *Sprietsma*, 197 Ill. 2d at 120)); *City of Chicago v. Comcast Cable Holdings, L.L.C.*, 231 Ill. 2d 399, 414 (2008) ("As this court's decisions have stated, we look to nonbinding federal law as persuasive authority when construing federal statutes due to the importance of maintaining uniform interpretations."); *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 352 (2005) ("As we have explained, '[i]n construing *** Federal statutes, we must look to the Federal decisions for its interpretation.' " (quoting *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.*, 38 Ill. 2d 31, 34 (1967))).

¶ 35    Thus, uniformity of the law continues to be an important factor in deciding how much deference to afford federal court interpretations of federal law. While we are *bound* only by the United States Supreme Court, if the lower federal courts are uniform on their interpretation of a federal statute, this court, in the interest of preserving unity, will give *considerable weight* to those courts' interpretations of federal law and find them to be highly persuasive. *Carter*, 237 Ill. 2d at 40. However, if the federal courts are split, we may elect to follow those decisions we believe to be better reasoned. *Sprietsma*, 197 Ill. 2d at 119-20.

¶ 36    Having determined the standard for assigning weight to federal court decisions interpreting federal law, we now apply that standard to federal court interpretation of the direct notice requirement under the Act. The United States Supreme Court has not addressed whether strict or substantial compliance is required for direct notice under the Act; thus, we turn to the lower federal courts to help guide our interpretation of the federal law.

¶ 37                    1. *Uniformity of Federal Case Law: Federal Decisions*
                             *Interpreting Notice Under the Act*

¶ 38    The arguments of the parties and our analysis center on the United States Eighth Circuit Court of Appeals case *Farm Credit Midsouth, PCA v. Farm Fresh Catfish Co.*, 371 F.3d 450 (8th Cir. 2004). Plaintiff contends that *Farm Fresh* is an outlier case, and that "[o]ther courts have held that substantial compliance with the requirements of section 1631(e) are sufficient if the notice given by the secured creditor reasonably placed the purchaser on notice of the claim." Defendant counters that the cases cited by plaintiff are either distinguishable or inapposite, and that *Farm Fresh* is the only federal case directly on point with the factual situation presented in the instant case and therefore, to maintain a uniform body of precedent, it should be followed by this court. We will first examine the federal decisions interpreting notice requirements under the Act to determine if they are uniform. See *Sprietsma*, 197 Ill. 2d at 119-20.

¶ 39        In *Farm Fresh*, Farm Credit (secured party) financed Reece's (debtor) purchase and operation of an Arkansas catfish farm. To secure the financing, Reece granted Farm Credit a first priority security interest in Reece's catfish and catfish fingerlings. Farm Credit filed a financing statement with the Arkansas Secretary of State and the counties in which Reece raised catfish. In 1998 and 2000 Farm Credit sent Farm Fresh (buyer) letters informing Farm Fresh that Farm Credit was financing Reece's production costs and that Farm Credit had a first priority lien in all of Reece's catfish. Farm Fresh regularly purchased catfish from Reece. After Reece defaulted on its obligations, Farm Credit discovered that Farm Fresh had allegedly not honored its payment obligations under the Act for 44 payments to Reece. Although Farm Fresh usually paid with checks payable to Reece and Farm Credit, for the 44 catfish purchases at issue the Farm Fresh checks listed *only* Reece as payee. Farm Credit sued Farm Fresh, alleging Farm Fresh converted Farm Credit's security interest. The district court granted Farm Fresh's motion for summary judgment, concluding Farm Credit and its letters did not strictly comply with the Act's direct notice exception. Farm Credit appealed, arguing it need only substantially comply with the Act's direct notice exception, and that its notices substantially complied with the notice exception. *Farm Fresh*, 371 F.3d at 452.

¶ 40        The Eighth Circuit reversed. The court began its review by noting that Congress adopted the Act to protect farm products purchasers from having to make double payment. Previously, buyers could be exposed to paying for the farm products twice: once to the seller, and then to the secured party whose security interest the buyer failed to protect. Examining the language of section 1631(e), the court noted subsection (e) declares that farm products purchasers take subject to the " 'security interest created by the seller *if*' (1) the secured creditor provided, within a year before the sale, the farm products purchaser with direct written notice of the secured creditor's interest (direct notice exception)" or "(2) the secured creditor filed an effective financing statement covering the farm products if the state has established a central filing system that complies with the Act (central filing exception)." (Emphasis in original.) *Farm Fresh*, 371 F.3d at 453 (quoting 7 U.S.C. § 1631(e)). The parties conceded that Arkansas law applied, and, as Arkansas had not established a central filing system that complied with the Act, only the Act's direct notice exception was applicable.

¶ 41        The court listed the requirements for direct notice spelled out in 7 U.S.C. § 1631(e)(1)(A)(ii) and section 1631(e)(1)(A)(v). The court also noted that, pursuant to section 1631(e)(1)(A)(ii)(IV), "[t]he description of the farm products must include the amount of the farm products subject to the security interest, the crop year, and the counties in which the farm products are located or produced." *Farm Fresh*, 371 F.3d at 453. The court then discussed the requirements for notice under a central filing system, noting that the financing statement filed by the secured creditor must contain the same information as required in the written direct notice, except the crop year and payment obligation information need not be included and "[n]otwithstanding errors contained in the financing statement, a financing statement in a central filing state remains effective so long as the errors 'are not

seriously misleading.' " *Farm Fresh*, 371 F.3d at 453 (quoting 7 U.S.C. § 1631(c)(4)(I)).[4]

¶ 42    Comparing the two notice exceptions, the court recognized that, unlike the Act's definition of an effective financing statement in a central filing state, the Act's direct notice exception "does not contain language indicating the required contents of the written notice are merely permissive or can be satisfied through substantial compliance (i.e., 'are not seriously misleading')." *Farm Fresh*, 371 F.3d at 453. The court found that, by including substantial compliance language in the central filing exception and excluding such language in the direct notice exception, Congress presumptively and logically intended that a secured creditor must strictly comply with the direct notice exception. Addressing the issue of precisely *why* Congress would treat one form of notice differently than the other, the court wrote:

> "Congress probably has its reasons for the disparate treatment, such as the desire to encourage central filings and a goal to simplify the interstate and foreign agricultural markets for farm products purchasers, and, ultimately, the farmer and the consumer. Congress is the appropriate forum to consider and, if it wishes, to legislate substantial compliance language in the Act's direct notice exception." *Farm Fresh*, 371 F.3d at 453-54.

¶ 43    The court also found that requiring strict compliance with the direct notice exception did not run afoul of the Act's purpose of protecting purchasers from double payment, but rather supported the Act's purpose, because requiring strict compliance removed ambiguity regarding compliance and protected farm products purchasers from double payment. *Farm Fresh*, 371 F.3d at 454. The court concluded that:

> "Because the July 1998 and March 2000 letters fail to comply with the Act's direct notice exception, Farm Fresh purchased the catfish free of Farm Credit's security interest, even though Farm Fresh knew of the existence of such interest." *Farm Fresh*, 371 F.3d at 454.

¶ 44    *Farm Fresh* has not been contradicted by subsequent federal cases. Indeed, only a handful of federal cases have addressed compliance with the notice exceptions of the Act. A federal court from Illinois recently cited to *Farm Fresh* with approval. See *In re Printz*, 478 B.R. 876, 883 (Bankr. C.D. Ill. 2012) ("The weight of authority is that anything less than complete and precise compliance with the notice provisions of § 1631(e)(1) is insufficient." (citing *Farm Fresh*, 371 F.3d at 454)). The only other federal cases cited by plaintiff as addressing the direct notice issue are *Lisco State Bank v. McCombs Ranches, Inc.*, 752 F. Supp. 329 (D. Neb. 1990), and *People's Bank v. Bryan Brothers Cattle Co.*, 504 F.3d 549 (5th Cir. 2007). Neither of these cases, however, supports plaintiff's argument that substantial compliance is sufficient for direct notice under the Act.

¶ 45    In *Lisco State Bank*, the court analyzed the notice the secured party provided to the buyer under both the direct notice and central filing exceptions. Nebraska, a central filing state, also allowed for direct notice. *Lisco State Bank*, 752 F. Supp. at 336 n.4. The court first

---

[4]A 2002 amendment, Public Law 107-171, § 10604(a)(6), redesignated former subparagraph (I) as (H).

determined that the "effective financing statement" failed to substantially comply with the notice requirements under the Act. *Lisco State Bank*, 752 F. Supp. at 338. Next, the court held the notice given to the buyer did not comply with the direct notice requirement under the Act, finding that the notice at issue merely named the secured party. *Lisco State Bank*, 752 F. Supp. at 339. While the court did write that plaintiff (secured party) failed to show it "met or substantially complied with the material terms of § 1631(e)(1)," the court added, in a footnote at the end of the paragraph, the following:

> "I note that the 'direct notice' provisions of the FSA [the Act] does not contain the 'substantial compliance' language included in the definition of the 'effective financing statement.' Seemingly compliance with the precise terms of the Act is required." *Lisco State Bank*, 752 F. Supp. at 339 n.6.

¶ 46    Similarly, the United States Fifth Circuit Court of Appeals' decision in *People's Bank* does not support plaintiff's argument that direct notice requires only substantial compliance. In *People's Bank*, the court found that a financing statement filed by a bank using the debtor's nickname was not "seriously misleading." *People's Bank*, 504 F.3d at 559. The analysis in *People's Bank* is of no value to our present case, however, because it deals only with substantial compliance and the central filing notice exception. *People's Bank* is a Mississippi case, and Mississippi is a central filing state. *People's Bank*, 504 F.3d at 554. The notice at issue in *People's Bank* is a central filing notice containing an "effective financing statement." The case does not discuss direct notice or whether strict compliance is required for direct notice.

¶ 47    Thus, the only federal case directly on point with the facts and issue before this court is *Farm Fresh*. Further, other federal cases that have touched on the issue would support an interpretation of section 1631(e) requiring strict compliance with the direct notice provisions. See *Printz*, 478 B.R. at 883; *Lisco State Bank*, 752 F. Supp. at 339 n.6. Therefore, to maintain a uniform body of law in interpreting the Act, we will follow *Farm Fresh* and apply its holding to our own analysis of the Act, unless we determine *Farm Fresh* is "wrongly decided." See *Sprietsma*, 197 Ill. 2d at 119-20.

¶ 48                    2. *Whether Farm Fresh Is Wrongly Decided*

¶ 49    Having found that *Farm Fresh* represents, at present, the uniform and uncontradicted opinion of federal courts interpreting section 1631(e) of the Act, we must next decide if we will follow *Farm Fresh*. This requires a discussion of the process we use to determine whether to follow federal court interpretation of federal law.

¶ 50    In several past cases, this court has elected not to follow federal court interpretation of federal statutes. See *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 91 (2005); *Bishop v. Burgard*, 198 Ill. 2d 495, 507 (2002); *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 423 (1999). In *Weiland* this court declined to follow Seventh Circuit interpretation of federal law where the United States Supreme Court had not ruled on the issue, the federal circuit courts were split, and the court believed the Seventh Circuit decision to be wrongly decided. *Weiland*, 188 Ill. 2d at 423. In *Bishop*, we declined to follow federal precedent where the United States Supreme Court had not ruled on the issue,

uncertainty existed among the federal circuit courts, and we believed the cited federal case to be wrongly decided based upon long-standing Illinois precedent. *Bishop*, 198 Ill. 2d at 507.

¶ 51   In *Bowman* we decided not to follow federal court precedent in determining whether a defendant being sued under the Jones Act (46 U.S.C. app. § 688 *et seq.* (2000)) could elect a jury trial. Based on prior federal circuit court and Illinois appellate court cases, the lower court held that only a plaintiff could demand a jury trial under the Jones Act. *Bowman*, 217 Ill. 2d at 80. We reversed, holding that the Jones Act did not prevent a defendant-employer from requesting a jury trial. *Bowman*, 217 Ill. 2d at 89. We rejected plaintiff's arguments that this court was bound by decisions from the United States Fifth and Ninth Circuit Courts of Appeal which held that only a plaintiff was entitled to elect a jury trial under the Jones Act. *Bowman*, 217 Ill. 2d at 91-92. Instead, we agreed with our appellate court case *Hutton v. Consolidated Grain & Barge Co.*, 341 Ill. App. 3d 401 (2003), and cited with approval to a law review article that also rejected the federal circuit court decisions. In justifying our departure from federal circuit precedent, we noted that, since *Sprietsma*, federal circuit and district court decisions were "merely *** persuasive." *Bowman*, 217 Ill. 2d at 91. We found that,

> "[h]ere ***, where the Supreme Court has not yet ruled upon the question presented, *i.e.*, whether a defendant in a state common law Jones Act case is entitled to demand a trial by jury, we are not bound by the holding in *Rachal* [*Rachal v. Ingram Corp.*, 795 F.2d 1210 (5th Cir. 1986)] or any federal or circuit court rulings on this issue. Rather, based on our own construction of the statute and cases such as *Johnson* [*Panama R.R. Co. v. Johnson*, 264 U.S. 375 (1924)] and *Hutton* which have interpreted it, we hold that the Jones Act does not give an exclusive right to the plaintiff to elect a trial by jury in an action filed in state court." *Bowman*, 217 Ill. 2d at 92.

¶ 52   The *Bowman* decision did not mention whether there was a split in federal authority on the issue directly in question, but it appears that for purposes of the opinion itself, it was treating federal law as unanimous. Further, outside of a passing reference to uniformity in a quotation from *Sprietsma*, the *Bowman* opinion, in its actual determination of whether to follow *Rachal* and the other federal circuit court cases, did not discuss uniformity or what role the importance of uniformity played in deciding how much persuasive authority to give federal court decisions interpreting federal law.

¶ 53   Based on the foregoing cases from this court, it is important to clarify how we determine whether we will follow federal court interpretations of federal law. Certainly, if there is no federal court authority on the issue, it would be necessary for this court to interpret a federal law *de novo*. If the federal courts are split on how they interpret a statute, then the importance of uniformity recedes and this court will follow the line of cases it believes to be properly decided. However, if the federal courts are uniform in their interpretation of a federal law, we will afford the federal decisions more deference than we would in a situation where the federal courts are split. *Sprietsma*, 197 Ill. 2d at 120. Further, we may afford a Seventh Circuit decision more persuasive value than we would the decisions of other federal courts, provided it is reasonable and logical. See *Wilson*, 187 Ill. 2d at 381.

¶ 54    However, we may choose not to follow Seventh Circuit or uniform lower federal court precedent if we find that precedent to be wrongly decided because we determine the decision to be without logic or reason. See *Weiland*, 188 Ill. 2d at 423; *Wilson*, 187 Ill. 2d at 381. What is meant by "wrongly decided" in this circumstance is not merely that this court would rule a different way. Rather, in giving deference to unanimous federal court opinion, we will find the federal court decisions to be "wrongly decided" only if the federal decision is outside "logic" and "reason." To hold otherwise and not follow unanimous federal precedent simply because we would "rule the other way" would nullify the uniformity portion of our analysis. Because we find the goal of developing a uniform body of law to be important, we must accord more deference to federal court interpretations when those interpretations are unanimous. Therefore, we will follow and apply the *Farm Fresh* decision to our interpretation of the Act, provided the *Farm Fresh* decision is not illogical and unreasonable.

¶ 55    In reaching its holding, the court in *Farm Fresh* engaged in statutory construction to ascertain the intent of Congress in crafting the notice exceptions in the Act. The court noted that in analyzing a statute it begins by examining the text, not " 'psychoanalzying those who enacted it.' " *Farm Fresh*, 371 F.3d at 452 (quoting *Carter v. United States*, 530 U.S. 255, 271 (2000)). The court assumed that the legislature's purpose was accurately expressed by the ordinary meaning of the statute's language. *Farm Fresh*, 371 F.3d at 452. The court then engaged in a close, detailed textual analysis of section 1631, noting that the language of the statute clearly expressed the requirements for compliance with the direct notice exception. The court then recognized that the Act also clearly states the requirements for compliance with an effective financing statement. However, the Act adds a caveat, not present in the language for compliance with direct notice, that, "[n]otwithstanding errors contained in the financing statement, a financing statement in a central filing state remains effective so long as the errors 'are not seriously misleading.' " *Farm Fresh*, 371 F.3d at 453 (quoting 7 U.S.C. § 1631(c)(4)(I)). The court concluded that by including the substantial compliance language in the effective financing statement for the central filing exception and excluding such language from direct notice, Congress presumptively intended that a secured creditor must strictly comply with the direct notice exception. *Farm Fresh*, 371 F.3d at 453. The court assumed Congress had its reasons for the disparate treatment, suggesting perhaps Congress wanted to encourage central filing. The court further supplied reasons for why requiring strict compliance with direct notice supported the Act's purpose of protecting farm products purchasers from double payment. *Farm Fresh*, 371 F.3d at 454.

¶ 56    We find the statutory construction analysis undertaken by the Eighth Circuit to be sound. The Eighth Circuit's analysis comports with the statutory construction analysis employed by this court. Like the Eighth Circuit in *Farm Fresh*, this court holds that the primary objective of statutory construction is to give effect to the intent of the legislature, and the most reliable indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 16; *Farm Fresh*, 371 F.3d at 452. If the statutory language is clear, we must apply the statute as written, without resort to extrinsic aids of statutory construction, and we will not depart from the plain meaning of a statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *Snyder*, 2011 IL 111052, ¶ 16. Here, the Eighth Circuit did just that when

it concluded that Congress, "[b]y including substantial compliance language in defining an effective financing statement for the central filing exception and excluding such language from the direct notice exception, *** presumptively and logically intended that a secured creditor must strictly comply with the direct notice exception." *Farm Fresh*, 371 F.3d at 453 (citing *Lutheran Social Service of Minnesota v. United States*, 758 F.2d 1283, 1289 (8th Cir. 1985) (noting "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion")). This court has similarly found that, "[w]hen the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended." *People v. Hudson*, 228 Ill. 2d 181, 193 (2008); *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees*, 146 Ill. 2d 347, 353 (1992). As the court in *Farm Fresh* interpreted the statute based on the statutory language's plain and ordinary meaning, employing a statutory construction analysis very similar to the one used by this court, we cannot say its decision was unreasonable or illogical. See *Sprietsma*, 197 Ill. 2d at 119.

¶ 57    Plaintiff, however, argues that the *Farm Fresh* decision is unreasonable and leads to an absurd result where notice under the direct notice exception is treated differently than notice under the central filing exception. Plaintiff argues "[t]here is no logical basis for concluding that Congress intended that a secured creditor could substantially comply with the constructive notice provision, but would have to strictly comply with the actual notice provisions," and cites to the Kansas Supreme Court case *First National Bank & Trust v. Miami County Cooperative Ass'n*, 897 P.2d 144 (Kan. 1995), for support.

¶ 58    In *First National Bank*, the Kansas Supreme Court held that a direct notice from a buyer to a secured party sufficiently complied with section 1631(e)(1) even though the notice failed to specify crop years, amount of crops, and the real property upon which the crops were grown. *First National Bank*, 897 P.2d at 152. In reaching this conclusion, the Kansas court did take into account the *Lisco State Bank* case, where the district court wrote that " '[s]eemingly compliance with the precise terms of the Act is required.' " *First National Bank*, 897 P.2d at 150 (quoting *Lisco State Bank*, 752 F. Supp. at 339 n.6). However, the Kansas court found the Act "unclear as to the adequacy of the notice to the buyer," and applied the rules of statutory construction to determine congressional intent, starting "with the assumption that, compared to the direct notification system to the buyer of farm products, central filing system notification would require more precise information because of its method of filing and its role in giving notice of the security interest to the public at large." *First National Bank*, 897 P.2d at 151-52. The court found that "[it] is logical and reasonable to conclude that Congress did not intend that buyers who receive direct notice containing minor omissions and errors which are not misleading could claim that the notice was ineffective because it did not strictly comply with the requirements of the Act." *First National Bank*, 897 P.2d at 152. The court concluded that, since the notices in question were not in strict compliance with the Act, adopting the argument that direct notices must strictly comply with the Act's notice requirements would allow the buyer to disregard the secured party's notice, even though the buyer was aware of the secured party's interest in the farm product, and such an interpretation would not serve the legislative intent of the Act. *First*

*National Bank*, 897 P.2d at 152.

¶ 59    We find plaintiff's argument and citation to *First National Bank* unavailing. First, we note that *First National Bank* was filed in 1995 and was decided without the benefit of the Eighth Circuit's decision in *Farm Fresh*. In fact, the Kansas court notes as much in the opinion, writing:

> "The Act's direct notification section does not address the effect of insufficient information contained in the notice. Although several cases are cited, neither party is able to provide case law which specifically interprets the notice requirements of the direct notification method." *First National Bank*, 897 P.2d at 149.

¶ 60    Further, the Kansas court appeared to base at least part of its decision on equitable principles, when it wrote, "[a]dopting the [buyer]'s argument that direct notices must strictly comply with the Act's notice requirements would allow the [buyer] to disregard the [secured party's] notice, even though the [buyer] was aware of the [secured party's] security interest in the farm product," and that this would not serve the legislative intent of the Act. *First National Bank*, 897 P.2d at 152. However, section 1631(d) of the Act specifically allows for a buyer to take free of a security interest created by the seller even though the security interest is perfected and the buyer knows of the existence of such an interest. 7 U.S.C. § 1631(d) (2006); *Farm Fresh*, 371 F.3d at 453. The purpose of the Act is not to protect the secured party in cases of imperfect notice where the buyer knows of the secured party's security interest, but rather to protect the buyer from making double payments and thereby facilitate interstate commerce. 7 U.S.C. § 1631(a), (b) (2006); *Farm Fresh*, 371 F.3d at 452. The determinative factor as to whether the buyer takes subject to the security interest is whether the secured party has sufficiently complied with the notice requirements under the Act, not the buyer's awareness of the security interest. See *Lisco State Bank*, 752 F. Supp. at 340 ("Although the result in this case seems harsh given that the defendant/buyer received oral notice of the plaintiff's security interest, it is clearly a result intended by the drafters of the FSA [the Act]. The intentional deletion of the time-worn 'good faith and with knowledge' U.C.C. language from the FSA definition of 'buyer in the ordinary course of business' clearly implies that a buyer may take free of a security interest even if he or she is aware that the sale is in violation of a security interest."). We do not find *First National Bank* to be persuasive. See *Farm Fresh*, 371 F.3d at 454 n.3 ("We reject the Kansas Supreme Court's application of a substantial compliance factor to the Act's direct notice exception. [Citation.] We consider the decision unpersuasive and contrary to established rules of statutory interpretation.").

¶ 61    We also note that *Farm Fresh* is the only federal court of appeals decision to squarely decide the issue in direct notice cases, and it decided that strict compliance is required under section 1631 of the Act. Yet in the eight years since the case was decided, Congress has chosen not to amend the Act to provide for substantial compliance in the direct notice context, even though it has amended section 1631 during that period in other respects. This raises the presumption that Congress is satisfied with the judicial construction placed on the statute by *Farm Fresh*. See *In re Marriage of O'Neill*, 138 Ill. 2d 487, 495-96 (1990) (where the legislative branch does not amend a statute following judicial construction, despite having the opportunity to do so, it will be presumed that it has acquiesced in the court's

-17-

interpretation and statement of legislative purpose).

¶ 62   Finally, we agree with the Eighth Circuit that strict compliance supports the purpose behind the Act. By requiring secured creditors to strictly comply with the Act's direct notice provision, any ambiguity regarding compliance is removed and buyers of farm products are protected from double payment. *Farm Fresh*, 371 F.3d at 454. Allowing substantial compliance would require a farm products purchaser to guess whether the written direct notice substantially complied with the direct notice exception, whereas under strict compliance a buyer may easily verify compliance with the Act's direct notice exception. *Farm Fresh*, 371 F.3d at 454. We find the *Farm Fresh* decision to be highly persuasive and will follow its interpretation of the Act. Therefore, a secured party must strictly comply with the notice requirements of section 1631(e) in order to provide sufficient direct written notice under the Act.

¶ 63   II. Plaintiff's Motion for Summary Judgment and Defendant's
Motion for Judgment on the Pleadings

¶ 64   Having found that a secured party must strictly comply with the direct notice requirements under the Act, we must now determine whether the trial court erred in granting plaintiff's motion for summary judgment and in denying defendant's motion for judgment on the pleadings. Plaintiff made no argument in either its opening or reply brief that the notices in question strictly complied with the requirements of the Act. Defendant argues that by failing to list the specific county in which the secured property crops were located, plaintiff did not strictly comply with the Act and thus its notices were insufficient, entitling defendant to judgment on the pleadings.

¶ 65   A circuit court's rulings on both a motion for summary judgment and a motion for judgment on the pleadings are subject to *de novo* review. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010) ("Where an order granting summary judgment is before us on appeal, our review is *de novo*."); *County Mutual Insurance Co. v. Carr*, 372 Ill. App. 3d 335, 339 (2007) ("The standard of review for reviewing a trial court's decision to grant a motion for judgment on the pleadings is *de novo*."). "Summary judgment is proper only where 'the pleadings, depositions, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Adames v. Sheahan*, 233 Ill. 2d 276, 295 (2009) (quoting 735 ILCS 5/2-1005(c) (West 2000)). "A motion for judgment on the pleadings is, like a motion for summary judgment, limited to the pleadings." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). "Judgment on the pleadings is properly granted if the pleadings disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Pekin Insurance Co.*, 237 Ill. 2d at 455. The court considers all well-pleaded facts as set forth in the pleadings of the nonmoving party as admitted, and the fair inferences drawn therefrom. *Pekin Insurance Co.*, 237 Ill. 2d at 455.

¶ 66   Here, the parties agree that there is no genuine issue of material fact. The only question for this court to resolve is whether the notices in question strictly comply with the direct notice requirements as set forth in the Act. To comply with the direct notice exception, "a

-18-

secured creditor must send the farm products purchaser a written notice listing," among other items, "a description of the farm products subject to the security interest created by the debtor, including the amount of such products where applicable, crop year, and *the name of each county or parish in which the farm products are produced or located*." (Emphasis added.) 7 U.S.C. § 1631(e)(1)(A)(ii)(IV) (2006); see *Farm Fresh*, 371 F.3d at 453. The notices in question contained a section devoted to a description of the property and county or parish where the farm products may be located, but the space under that section was left blank. A box was checked next to a line saying "the security interest also covers the described farm products wherever located and is not limited to those located on the above property." That is insufficient, however, to strictly comply with the Act. The Act specifically requires the secured party to state the county or parish where the secured property is located. We agree with defendant that, if such a general notice can provide the property description and name of county as required by the Act, this would have the effect of writing the requirement of such description and county reference out of the statute. There would be no reason to require a description of property, including county, if a notice could simply say that all farm products wherever located are covered. Plaintiff's notices have failed to strictly comply with the Act.

¶ 67    Plaintiff argues in its brief that, regardless of minor errors on the notice form as to the county in which the crops were located, defendant had actual or at least constructive notice of plaintiff's security interest in the crops. However, as discussed above, and as noted by the appellate court, the Act makes no "provision for constructive or actual notice when the formal direct notice does not comply with the statute's requirements for direct notice." 2012 IL App (3d) 100495, ¶ 29. Because the April 2005 and June 2006 notices failed to comply with the Act's direct notice exception, defendant purchased the crops free of plaintiff's security interest as a matter of law, even if defendant knew of the existence of such interest. See *Farm Fresh*, 371 F.3d at 454.

¶ 68    The circuit court's decision to grant summary judgment to plaintiff and deny judgment on the pleadings to defendant was premised entirely on its finding that substantial compliance with direct notice was required and that plaintiff had provided sufficient notice of its security interest to defendant. Having found as a matter of law that strict compliance with direct notice is required and that plaintiff's notices to defendant were insufficient under the Act, plaintiff has no claim against defendant for failure to protect plaintiff's security interest. Thus, the circuit court's orders granting plaintiff's motion for summary judgment and denying defendant's motion for judgment on the pleadings were properly reversed by the appellate court.

¶ 69                                        CONCLUSION

¶ 70    We hold that a secured party must strictly comply with the direct notice provisions of 7 U.S.C. § 1631(e)(1)(A) in order to sufficiently notify a buyer of the secured party's security interest. Plaintiff's notices that omitted the county in which the secured property was located were insufficient under the direct notice provision of the Act.

¶ 71    The judgment of the appellate court, reversing the orders of the circuit court, is therefore

affirmed.

¶ 72    Affirmed.

¶ 73    JUSTICE FREEMAN, specially concurring:

¶ 74    While I agree that the appellate court's judgment must be affirmed, I am concerned that today's lengthy opinion may cause confusion regarding the appropriate standard to be applied when deciding the degree of deference, if any, that Illinois courts must afford federal district and appellate court decisions in the interpretation of federal statutes.

¶ 75    Today's decision, as I understand it, reaffirms the standard developed in *Sprietsma v. Mercury Marine*, 197 Ill. 2d 112 (2001), *rev'd on other grounds*, 537 U.S. 51 (2002). That standard is, succinctly stated: we will consider reasonable and logical federal court precedent to be merely persuasive, with the recognition that uniformity of the law is an important consideration in the interpretation of federal statutes. See *Sprietsma*, 197 Ill. 2d at 119-20; see also *Williams v. Board of Review*, 241 Ill. 2d 352, 360 (2011); *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 40 (2010); *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 91-92 (2005).

¶ 76    Applying that standard here, I agree that *Farm Credit Midsouth, PCA v. Farm Fresh Catfish Co.*, 371 F.3d 450 (8th Cir. 2004) (*Farm Fresh*), is reasonable and logical and that it provides persuasive authority that section 1631(e) demands strict compliance with its terms. As today's opinion notes, this conclusion is supported by the fact that, in the eight years since *Farm Fresh* was decided, Congress has taken no action that would suggest otherwise. See *supra* ¶ 61 (citing *In re Marriage of O'Neill*, 138 Ill. 2d 487, 495-96 (1990)). Because the direct notices provided in this case did not identify the county in which the debtor's farm products were located, the plaintiff failed to strictly comply with the statutory mandates, and the judgment of the appellate court must be affirmed.

¶ 77    I believe, however, that the explanation and application of the above standard in today's opinion is clouded by a complicated and needless discussion of the concept of uniformity. The opinion's focus on uniformity (*supra* ¶¶ 34, 35, 38, 47-54) is misplaced here because *Farm Fresh* is the only federal case directly on point.

¶ 78    In my view, uniformity in the context of the *Spreitsma* standard means a uniform body of precedent, which comes into play only in situations where there are multiple federal decisions that have reached a unanimous interpretation of a federal statute within the confines of similar relevant fact patterns. Black's Law Dictionary defines the term "uniform" as "[c]haracterized by a lack of variation; identical or consistent." Black's Law Dictionary 1668 (9th ed. 2009). Thus, the term "uniform" is applicable only when two or more things are being considered in comparison to each other. A discussion of uniformity would certainly be appropriate if another federal circuit court of appeals or a district court had specifically addressed the question of whether the direct-notice provision in section 1631(e) required strict compliance or could be satisfied by substantial compliance. In that circumstance, we would be obliged to address the impact of those decisions, whether they be uniform or conflicting. However, as the court itself observes, the Eighth Circuit's decision in *Farm*

*Fresh* is the only decision that is directly on point (see *supra* ¶¶ 47, 61).

¶ 79   As the court correctly points out, the Fifth Circuit's decision in *Peoples Bank v. Bryan Brothers Cattle Co.*, 504 F.3d 549 (5th Cir. 2007), has no relevance here because it considered only whether an effective financing statement was sufficient to constitute substantial compliance in a central filing jurisdiction and, therefore, is factually distinguishable (see *supra* ¶ 46). Also, though the court relies on *In re Printz*, 478 B.R. 876 (Bankr. C.D. Ill. 2012), and *Lisco State Bank v. McCombs Ranches, Inc.*, 752 F. Supp. 329 (D. Neb. 1990), to support the determination that there is a uniform body of precedent interpreting section 1631(e) (see *supra* ¶ 47), I disagree. Neither the bankruptcy court in *In re Printz* nor the district court in *Lisco State Bank* directly addressed whether strict compliance with section 1631(e) is required because, in each case, the secured party never claimed that it had complied with the material requirements of direct notice under the statute. See *In re Printz*, 478 B.R. at 883; *Lisco State Bank*, 752 F. Supp. at 339. Therefore, none of these cases are relevant in determining whether there is uniformity in the interpretation of the direct-notice exception in section 1631(e).

¶ 80   Aside from *Farm Fresh*, there are no other federal court decisions that have considered the precise facts and issue presented here (see *supra* ¶¶ 47, 61). In light of this fact, the court's extensive discussion of uniformity has no place in today's decision. It does not advance the applicable analysis and may well confuse the bench and bar as to the importance of uniformity in deciding the level of deference to be assigned federal precedent that interprets federal statutes.

¶ 81   Moreover, even if a discussion of uniformity were required to resolve this case, I cannot agree with the court's characterization of *Farm Fresh* as "represent[ing], at present, the uniform and uncontradicted opinion of federal courts interpreting section 1631(e) of the Act" (see *supra* ¶ 49). It seems indisputable that a single item cannot be said to be "identical" to or "consistent" with itself, nor does it make sense to describe something as having "a lack of variation" from itself. In my view, a single on-point decision, even if uncontradicted, does not constitute a "uniform" body of precedent.

¶ 82   I agree that it is important for this court to clearly state the standard by which Illinois courts will determine whether to follow federal court interpretations of federal law (see *supra* ¶ 53). To the extent that today's decision reaffirms the principles articulated in *Sprietsma* and later confirmed in *Bowman*, I also agree.

¶ 83   For the foregoing reasons, I join in the court's decision.

¶ 84   JUSTICE BURKE joins in this special concurrence.