# Illinois Official Reports

## Appellate Court

*Rogers v. Illinois Department of Revenue*, 2017 IL App (1st) 151449

| | |
|---|---|
| Appellate Court Caption | JOHN E. ROGERS and FRANCES L. ROGERS, Petitioners, v. ILLINOIS DEPARTMENT OF REVENUE and ILLINOIS INDEPENDENT TAX TRIBUNAL, Respondents. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-1449 |
| Filed<br>Rehearing denied | March 23, 2017<br>May 5, 2017 |
| Decision Under Review | Petition for review of order of the Illinois Independent Tax Tribunal, No. 14-TT-153. |
| Judgment | Affirmed. |
| Counsel on Appeal | John E. Rogers, of Chicago, petitioner *pro se*.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for respondents. |
| Panel | PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1      Under section 506(b) of the Illinois Income Tax Act (Act) (35 ILCS 5/506(b) (West 2010)), an Illinois taxpayer must report any change in his or her federal income tax return within 120 days of the change having been "agreed to" or "finally determined for federal income tax purposes." The question in this case is whether petitioners John E. Rogers and Frances L. Rogers "agreed to" a change in their 2002 federal returns, or whether such a change was "finally determined," when John signed a settlement agreement with the IRS on behalf of a partnership whose losses petitioners reported on their personal returns.

¶ 2      Petitioners listed a $495,000 loss on their 2002 federal return based on a loss suffered by a partnership called Wacker-Madison, LLC (Wacker-Madison). Although petitioners did not have a direct interest in Wacker-Madison, one of the partners in Wacker-Madison was another partnership called Abingdon Trading, LLC (Abingdon). John held an interest in Abingdon, meaning that Wacker-Madison's loss passed along to Abingdon and again to John. After the Internal Revenue Service (IRS) conducted an audit of Wacker-Madison, it notified petitioners that the $495,000 was incorrect. John signed a settlement agreement with the IRS on behalf of Abingdon, which adjusted the loss on Wacker-Madison's 2002 return.

¶ 3      Respondent, the Illinois Department of Revenue (the Department), sent petitioners a notice of deficiency (the Notice) that claimed that petitioners owed an additional $72,336.86 in Illinois income tax for tax year 2002. The Department alleged that petitioners had not timely notified it of a change to their 2002 federal returns. Petitioners filed a petition with respondent, the Illinois Independent Tax Tribunal (the Tribunal), arguing that the Notice was premature because the change to their federal return was not "agreed to" or "finally determined" under section 506(b). The Tribunal granted the Department's motion for summary judgment, finding that petitioners had agreed to a change in their federal returns when John signed the settlement agreement with the IRS and that the settlement constituted a final determination of the change.

¶ 4      Petitioners appeal, claiming that the Tribunal erred in awarding the Department summary judgment for two reasons: (1) there were questions of fact surrounding John's status as a partner in Abingdon and Abingdon's status as a partnership, meaning that there were questions of fact regarding John and Abingdon's ability to agree to a change in the federal tax returns of Wacker-Madison, and (2) there were questions of fact regarding whether the settlement agreement John signed constituted a final determination of the change to his federal taxes.

¶ 5      We affirm the decision of the Tribunal. The settlement agreement showed that John, acting on behalf of Abingdon, which was a partner in Wacker-Madison, agreed to a change in the amount of loss reported on Wacker-Madison's 2002 tax returns. That adjustment passed through Abingdon to petitioners' personal income tax return. Moreover, the reduction in the loss was a final determination of the amount of loss Wacker-Madison suffered in 2002. We affirm the Tribunal's award of summary judgment for the Department.

¶ 6                                I. BACKGROUND

¶ 7      Petitioners filed joint federal and Illinois income tax returns in 2002. Petitioners reported a $495,000 loss on those returns. That $495,000 loss reflected the loss incurred by Abingdon, a limited liability company taxed as a partnership. Abingdon itself incurred the loss because it was a partner in Wacker-Madison, which suffered the loss initially. In other words,

Wacker-Madison reported a loss, which flowed to its partners, including Abingdon, which in turn flowed to petitioners.

¶ 8        Several years later (the record is unclear as to precisely when), the IRS audited Wacker-Madison and discovered that it had not suffered the $495,000 loss. The IRS sought to collect on the deficiency from petitioners.

¶ 9        On June 17, 2008, John signed an IRS Form 870-LT, titled, "Settlement Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax and Additional Amounts and Agreement for Affected Items," on Abingdon's behalf. The form said that the IRS and Abingdon "agree[d] to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items." The form said that Abingdon consented "to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to adjustments to partnership items."

¶ 10        On September 12, 2011, the IRS sent John a notice of intent to levy, indicating that it intended to take his personal property to satisfy his outstanding debt of $608,474.06. The notice said that John still had "unpaid taxes for the tax year ending December 31, 2002."

¶ 11        In response to the IRS's threat to levy their property, petitioners filed a request for a collection due process hearing with the IRS. In explaining their reasons for requesting the hearing, petitioners said that the adjustment to Wacker-Madison's gains was incorrect and that the statute of limitations had run on the IRS's attempt to collect the deficiency. On February 24, 2012, the IRS sent petitioners a letter, informing them that it had received their request for a collection due process hearing and that their request had been forwarded to the IRS's appeals department.

¶ 12        On March 25, 2013, the Department sent John a letter informing him that it had begun an audit of his and Frances's 2002 Illinois personal income tax returns.

¶ 13        On June 9, 2014, the Department issued petitioners the Notice, which stated that the Department found a deficiency of $72,336.86 on petitioners' state return. The Notice said that the Department received information from the IRS that petitioners "did not timely notify us of a final federal change (*e.g.*, RAR, federal amended return)," as required by section 506.

¶ 14        Petitioners filed a petition with the Tribunal challenging the Notice. Petitioners alleged that they filed federal and State tax returns for 2002, claiming a $495,000 loss from Abingdon that "resulted from the flow through of a larger loss" by Wacker-Madison. Petitioners stated that Abingdon held a minor interest in Wacker-Madison, so John "held a minor interest in Wacker-Madison through" Abingdon, and "the other two members of Abingdon were the sole recipients of cash income and are to be solely taxed on Abingdon's cash gross receipts per the Abingdon agreements." Petitioners acknowledged that Wacker-Madison entered into a settlement with the IRS, reducing Wacker-Madison's loss by 75%.

¶ 15        Petitioners alleged that the IRS audited Wacker-Madison's 2002 tax return rather than petitioners' or Abingdon's returns, and that the IRS improperly "allocated to petitioners cash income from Abingdon in which the petitioners never partook." Petitioners also noted that they pursued a collection due process hearing to review the IRS miscalculation and argued that the "IRS adjustments are not final until the hearing is held and [becomes] appealable to the U.S. Tax Court," so the Department was "prematurely claiming finality" by alleging a deficiency.

- 3 -

¶ 16    The Department answered the petition, alleging that the IRS had informed petitioners in a letter dated May 27, 2011, of its adjustment of their adjusted gross income (AGI) for 2002, but petitioners did not file an amended State return for 2002 within 120 days of that adjustment, as required by section 506 of the Act.

¶ 17    On September 4, 2014, the same day that the Department answered the petition that petitioners had filed in the Tribunal, petitioners filed a petition in United States Tax Court, challenging the IRS's collection efforts. Petitioners claimed that the IRS had denied them due process, that the IRS had engaged in "a decades[-]long vendetta against petitioners," that the IRS had not properly issued them a notice of deficiency, that any notice of deficiency was barred by the statute of limitations, and that the IRS had erroneously calculated the adjustment to Wacker-Madison's losses in 2002. Specifically, petitioners alleged, "Instead of reducing the loss flowing through Abingdon from Wacker-Madison by 75% the IRS erroneously leapfrogged an exceedingly large amount of phantom income over the operating agreement of Abingdon and directly to petitioners *** even through [*sic*] petitioners were merely remote indirect partners in Wacker-Madison at best."

¶ 18    In the Tribunal, the Department moved for summary judgment, arguing that the issue before the Tribunal was whether the IRS adjustment of petitioners' 2002 AGI was agreed or final before the Department issued the Notice. The Department alleged that the IRS adjusted Wacker-Madison "partnership items" for 2002, the adjustment was agreed when John "executed the Form 870-LT on behalf of Abingdon" in June 2008, and the adjustment became final on May 25, 2011. The Department argued that section 506 of the Act required petitioners to file an amended State return for 2002 within 120 days of May 25, 2011, but they failed to do so, and thus the Notice was valid and timely. Regarding the collection due process hearing proceedings, the Department argued that such proceedings may be commenced only to challenge the collection of a final assessment, and thus the existence of petitioners' pending hearing was actually evidence of the assessment's finality.

¶ 19    The Department attached copies of the Form 870-LT, the IRS account transcript for petitioners, and the May 27, 2011, IRS letter to its motion. The Department also attached a certificate from its director that said that all of the attachments were true and correct copies of documents kept by the Department "in the ordinary course of its business."

¶ 20    Petitioners responded to the summary judgment motion, arguing that John signing the Form 870-LT on Abingdon's behalf was not his agreement to the 2002 AGI adjustment on petitioners' return because Abingdon "as an entity stood between [him] and" Wacker-Madison. Petitioners argued that John "did not and could not" receive cash distributions from Abingdon, so he "was in fact not a partner in Abingdon as he did not participate in the millions of dollars in cash which ran through Abingdon accounts." They maintained that petitioners' 2002 AGI adjustment had not been decided because the IRS had not considered the effect of the Wacker-Madison settlement on Abingdon.

¶ 21    Petitioners also argued that the IRS account transcript was "mere hearsay" reflecting the "administrative calculations by mere clerks which are subject to review on the merits" in a collection due process hearing and the United States Tax Court. Petitioners stated that they had a case pending in the United States Tax Court, case No. 20882-14, that had survived several IRS motions to dismiss and thus the instant Tribunal proceedings should be stayed until the Tax Court proceedings reach final judgment.

¶ 22     On December 22, 2014, a settlement officer from the IRS's appeals office sent petitioners a letter regarding the collection due process hearing with the IRS. After apologizing for the delay in getting to petitioner's request, the officer said that, during the hearing, she could consider whether petitioners owed the deficiency, "but only if [they] did not receive a statutory notice of deficiency or ha[d] not otherwise had an opportunity to dispute [their] liability." The officer added, "Based on my review of your account, you signed a waiver or agreement consenting to the assessment. I have requested the administrative file for further review."

¶ 23     In January 2015, the Tax Court dismissed petitioners' case for lack of jurisdiction. The Tax Court agreed with the IRS that the Wacker-Madison adjustment flowed through Abingdon to petitioner John and found that he waived the right to a notice of deficiency when he signed the Form 870-LT. But the Tax Court agreed with petitioners that they could bring a collection due process hearing proceeding.

¶ 24     Petitioners sought to stay the proceedings in the Tribunal based on the pending collection due process hearing. The Tribunal denied their request.

¶ 25     The Tribunal granted summary judgment for the Department on April 27, 2015, finding that petitioners agreed to the IRS 2002 adjustment when John signed the Form 870-LT on Abingdon's behalf. The Tribunal found that Abingdon was a partner and John was an indirect partner in Wacker-Madison. As to petitioners' argument that they received no cash distribution, the Tribunal stated that "this argument ignores the longstanding principle that an individual partner is taxable on his distributive share of partnership income regardless of whether the income was actually distributed." The Tribunal also found that "[t]he account transcript is sufficient evidence of the assessment's finality."

¶ 26     Petitioners filed a motion to reconsider the grant of summary judgment. They argued that the pending collection due process hearing showed that there were still unresolved issues of fact regarding petitioners' 2002 income and petitioner Frances's application for innocent spouse relief. They stated that they planned to file a federal *mandamus* action regarding the Tax Court's dismissal for want of jurisdiction.

¶ 27     The Tribunal denied reconsideration on May 26, 2015. This appeal followed. See 35 ILCS 1010/1-75(a) (West 2014) (decisions of Tribunal may be appealed directly to appellate court).

## II. ANALYSIS

¶ 29     Petitioners challenge the Tribunal's award of summary judgment for the Department. They claim that the Department failed to show, as a matter of law, that the alterations to petitioners' 2002 federal income taxes had been "agreed to or finally determined for federal income tax purposes." 35 ILCS 5/506(b) (West 2010).

¶ 30     Summary judgment is proper only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. We review *de novo* a circuit court's rulings on a motion for summary judgment. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 65. We also apply *de novo* review to the extent that petitioners' claims in this case require us to interpret the Act. See *Carter v. SSC Odion Operating Co.*, 237 Ill. 2d 30, 39 (2010) (question of statutory interpretation reviewed *de novo*).

¶ 31 In relevant part, section 506(b) requires a taxpayer to notify the Department of any recalculation of federal taxable income or loss "not later than 120 days after such alteration has been agreed to or finally determined for federal income tax purposes." 35 ILCS 5/506(b) (West 2010). Thus, petitioners were required to inform the Department of the adjustments to their 2002 federal tax returns if those adjustments had either been agreed to or finally determined. Petitioners contend that neither condition was satisfied. The Tribunal ruled that both were satisfied.

¶ 32 The Tribunal first found that petitioners had "agreed to" the change in the 2002 return of Wacker-Madison when John signed the settlement agreement on behalf of Abingdon, which was itself a partner in Wacker-Madison. Before reaching the substance of petitioners' argument on this point, we feel it is appropriate to discuss some of the general concepts surrounding federal taxation of partnerships.

¶ 33 Partnerships themselves are not subject to income tax; the income tax attributable to a partnership passes through to the individual partners. 26 U.S.C. § 701 (2000); *United States v. Basye*, 410 U.S. 441, 448 (1973). Thus, while a tax return for the partnership must be filed every year for informational purposes (26 U.S.C. § 6031(a) (2000)), "the partnership is merely a tax computing unit and is not a taxpayer or a taxable entity." *Randolph Products Co. v. Manning*, 176 F.2d 190, 192 (3d Cir. 1949); see also *Basye*, 410 U.S. at 448 n.8 ("The legislative history indicates, and the commentators agree, that partnerships are entities for purposes of calculating and filing informational returns but that they are conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares.").

¶ 34 Those items that must be considered when filing a partnership's return are appropriately called "partnership items." 26 U.S.C. § 6221 (2000). "Partnership items" include both "the partnership aggregate" and "each partner's share" of the partnership's "income, gain loss, deduction, or credit of the partnership." 26 C.F.R. § 301.6231(a)(3)-1(a)(1)(i) (2002).

¶ 35 The parties do not dispute that, in the abstract, a change in a partnership's losses would constitute a change that a taxpayer would be required to report to the Department. See 35 ILCS 5/506(b)(1) (West 2010) (taxpayer must notify Department of any alteration to "taxable income, any item of income or deduction, the income tax liability, or any tax credit reported in a federal income tax return"); *Peoria & Pekin Union Ry. Co. v. Department of Revenue*, 301 Ill. App. 3d 736, 743 (1998) (increase in railway's taxable income had to be reported even though it did not give rise to additional tax liability). Instead, petitioners argue that they were not obligated to report the recalculation of Wacker-Madison's losses on its 2002 return because the settlement agreement John signed in 2008 on behalf of Abingdon was not an agreement to the recalculation.

¶ 36 The express terms of the settlement agreement refute petitioners' argument. The Form 870-LT signed by John states that the Commissioner of the IRS and Abington "agree[d] to the determination of partnership items and partnership level determinations." The agreement also said that, absent fraud, malfeasance, or misrepresentation of fact, "the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened." Thus, the settlement agreement was a final agreement as to the "adjustment to partnership items" laid out in the attached schedule, including the loss incurred by Wacker-Madison.

¶ 37    The settlement agreement also said that it was being entered into "[u]nder the provisions of sections 6224(c) and 7121 of the Internal Revenue Code." Section 6224(c) of the Internal Revenue Code (Code) (26 U.S.C. § 6224(c) (2000)) governs settlement agreements between partnerships and the IRS. It states that a settlement agreement between the IRS and "1 or more partners in a partnership" binds all parties to the agreement, and that an agreement by a "pass-thru partner" will bind "[a]n indirect partner." 26 U.S.C. § 6224(c)(1) (2000). A " 'pass-thru partner' [is] a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in [a] partnership," and an " 'indirect partner' [is] a person holding an interest in a partnership through 1 or more pass-thru partners." 26 U.S.C. § 6231(a)(9), (10) (2000).

¶ 38    Applying these provisions of the Code, we concur with the Tribunal that John agreed to be bound by the adjustment of Wacker-Madison's loss by signing the Form 870-LT settlement agreement. In their petition to the Tribunal, petitioners conceded that Wacker-Madison and Abingdon were "Illinois limited liability compan[ies] taxed as *** partnership[s]," and nowhere in the petition did they challenge or question the treatment of either Wacker-Madison or Abingdon as a partnership. Petitioners stated in their petition that John "held a minor interest in Wacker-Madison through another limited liability company, Abingdon" and that "[p]etitioner husband was a very indirect partner in" Wacker-Madison.

¶ 39    Because Abingdon was taxed as a partnership, and petitioners held their interest in Wacker-Madison by virtue of their interest in Abingdon, Abingdon was a pass-thru partner and John was an indirect partner in Wacker-Madison. See 26 U.S.C. § 6231(a)(9) (2000) (pass-thru partner may be "a partnership"); *Jimastowlo Oil, LLC v. Commissioner*, 106 T.C.M. (CCH) 161, 2013 WL 4516184, at *8 (2013) ("LLCs taxable as partnerships *** constitute 'pass-thru' partners under section 6231(a)(9)"). Further, petitioners were bound as indirect partners via the settlement between the IRS and their pass-thru partner, Abingdon. 26 U.S.C. § 6224(c)(1) (2000).

¶ 40    Petitioners contend that the Tribunal erred in simply assuming "that [John] was a partner in Abingdon." They claim that John "did not share in the profits of Abingdon as the other two members of Abingdon received all the cash and he received none." Petitioners argue that, because John did not receive cash from Abingdon, that fact "blocks Abingdon as a tax partnership."

¶ 41    But as petitioners conceded, John held an interest in Abingdon, which was taxed as a partnership. He was thus required to include his share of Abingdon's income on his returns even if he did not actually receive any cash. See *Basye*, 410 U.S. at 453-54 ("[I]t is axiomatic that each partner must pay taxes on his distributive share of the partnership's income without regard to whether that amount is actually distributed to him," and "[f]ew principles of partnership taxation are more firmly established than" that principle); *Cole v. Commissioner*, 637 F.3d 767, 778 (7th Cir. 2011) (" 'partners are taxable on their distributive or proportionate shares of current partnership income irrespective of whether that income is actually distributed to them' " (quoting *Basye*, 410 U.S. at 447-48)).

¶ 42    Petitioners introduced no evidence to show that John was not actually a partner in Abingdon or that the amount of income he was required to report on his federal return differed from his distributive share of the partnership's income. In fact, petitioners produced no evidence at all regarding Abingdon's structure, such as its partnership agreement.

¶ 43　　Because the settlement agreement finally adjusted Wacker-Madison's 2002 returns, which, in turn, required petitioners to adjust their federal return, we hold that petitioners agreed to the adjustment of their 2002 tax returns under section 506(b). Thus, the Tribunal did not err in awarding the Department summary judgment on this basis.

¶ 44　　Because section 506(b) requires notification to the Department within 120 days after the adjustment "has been agreed to *or* finally determined" (emphasis added) (35 ILCS 5/506(b) (West 2010)), and we hold that the Tribunal properly found that the adjustment was "agreed to" by John, it is not necessary to consider the Tribunal's alternative ground for summary judgment, that the adjustment was "finally determined."

¶ 45　　　　　　　　　　　　　　　III. CONCLUSION

¶ 46　　For the reasons stated above, we affirm the Tribunal's judgment.

¶ 47　　Affirmed.